### CITY OF BENTONVILLE *v.* BROWNE.

### Opinion delivered May 19, 1913.

1. MUNICIPAL CORPORATIONS — MISMANAGEMENT OF FUNDS — WATERWORKS IMPROVEMENT DISTRICT—REMEDY.—An owner of property within a waterworks improvement district has the right to sue to prevent the city from wasting or mismanaging or improperly diverting the fund of the improvement district. Sec. 13, art. 16, Const.; Kirby's Dig., § 5485. (Page 311.)

2. JUDGMENTS—PARTIES—EFFECT.—When a property owner brought suit to compel the city to lay a water main to his property, where the holders of city warrants are not parties to the proceedings, the chancery court has no authority to make an order affecting the validity of the warrants. (Page 311.)

3. MUNICIPAL CORPORATIONS—WATERWORKS IMPROVEMENT DISTRICT—
   FUNDS.—The chancery court has authority to order that a city
   keep separately from the general funds of the city, the funds of
   a waterworks improvement district, and account for the same.
   (Page 311.)

4. MUNICIPAL CORPORATIONS — PUBLIC REVENUE — ADMINISTRATION. —
   Courts can not administer the affairs of a municipality in the dis-
   bursement of public revenue. (Page 312.)

Appeal from Benton Chancery Court; *T. H. Hum-
phreys,* Chancellor; reversed.

### STATEMENT BY THE COURT.

This appeal is a continuation of the case of *Browne*
v. *Bentonville,* reported in the 94 Ark., page 80. The
waterworks improvement district was formed coexten-
sive within the corporate limits of the city (then town)
of Bentonville, August, 1896. Appellee was then, and
since continuously has been, the owner of a tract of land,
consisting of about four acres, situated within the said
improvement district. The city took over the water-
works plant, and has since continuously operated it under
the authority conferred by section 5675 of Kirby's Di-
gest. After the city took over the plant, it kept no sepa-
rate account of the receipts derived, nor of the expenses
incurred, in its operation. All of the city funds, whether
derived from the waterworks plant, or from other
sources, were placed to the credit of the city's general
revenue fund, and warrants were drawn against this fund
by the city for all municipal purposes.

Appellee instituted a suit, the purpose of which was
to compel the city to lay a four-inch water main to his
property in order that he might have fire protection. As
an incident to this suit, and for the purpose of showing
that the city was able to construct this main, he undertook
to show that the plant was being operated with great
profit to the city, but that the city was using these profits
for general municipal purposes. At the time of the in-
stallation of the plant, bonds were sold to pay for the
cost of this improvement, which constituted a lien upon
all the property within the improvement district, and
appellee alleged that, in common with all other property

owners, his property was burdened with this lien, but that he had derived no benefit from the waterworks, and would derive none unless the city was required to keep the accounts of the plant separate from its other funds, and be required to expend the net profits in the extension of the system, until all portions of the district had the benefit of the improvement. During the progress of that trial, much proof was taken upon the question of the cost of the plant, and the expenses of maintenance and operation, and of its receipts, and finally there was filed by the attorneys in the case, a stipulation that the income derived from the waterworks plant for the years 1898 to July 1, 1907, inclusive, exceeded the expenditures for all purposes in the sum of $1,000, and it was further stipulated that the income had equalled the expenditures since the last mentioned date. The court found in the original case that the income of the plant had been placed in the general revenue fund, and had been paid out for ordinary purposes, and that the sum of $1,000 had been received by the city in excess of the expenditures. The court had granted a temporary restraining order, which was made permanent, requiring the city to keep the funds separate, and to draw upon the funds of the waterworks plant by special warrants, showing upon their face for what purpose they were issued; and that only such warrants should be paid out of said fund, as were given for the payment of the expense of this plant. The city was ordered to pay over to the credit of the waterworks fund this sum of $1,000 not later than July 1, 1909, and it was also ordered that the city furnish appellee with a two-inch main to his residence; and that thereafter water be furnished him from this main, upon terms similar to that under which it was furnished other residents of the district. Both parties appealed from this decree, the appellee contending that the court should have ordered appellant to lay a four-inch instead of a two-inch main; and the city contending that it should not have been required to lay any main. Pending the appeal, the city constructed the two-inch main as directed by the decree, but this court held that

the decree was erroneous in requiring the city to do so, but held that inasmuch as the decree had been complied with, it should be affirmed, and such was the order of the court. The purpose of that suit manifestly was to compel the city to lay the four-inch main, and the other questions involved were collateral to that, and no other feature of the case was discussed in the opinion of this court.

On the 8th day of December, 1910, appellee was permitted by the court below to file a complaint and motion in that original cause, and the clerk of the court was ordered to issue a citation against the appellants, returnable on the first day of the January term, 1911, of that court, at which time permission was given appellee to maintain this present proceeding, for the alleged purpose of enforcing the terms of this original decree, which had been entered on the 26th day of August, 1908. In this pleading, which appellee calls a complaint and motion, the mayor, aldermen, recorder and treasurer of the city of Bentonville are made parties defendant, and it was alleged that they and their predecessors in office had failed and refused to perform the terms of this original decree, which was made an exhibit to the complaint and motion. It was alleged that these officers had disregarded the directions of this original decree in the following particulars: That they had been ordered to pay over to the credit of the waterworks fund the sum of $1,000, which should not be used except for the operation of that plant; and that thereafter, no warrants should be drawn against this waterworks fund except for the expenses of that plant, but that notwithstanding this order of the court, that they had issued a number of warrants against this water fund, which should only have been issued against the city's general revenue fund. The evidence appears to establish the fact, as found by the chancellor, that the water plant had earned the sum of $1,000 at the date of the original decree, and had since that time been self-sustaining. But it appears that certain sums of money had been borrowed for the use of the water plant, and that warrants had been issued for the amount of

these loans, before the date of the original decree, and were issued against the city's general revenue fund, which fund, at the time of the issuance of the warrants, comprised all the city's income, whether derived from the waterworks or other sources.

After this original decree had been rendered, an order was made by the council of the city, calling in all outstanding warrants issued by the city, under the authority of section 5508, Kirby's Digest, and at that time certain warrants owned by the First National Bank and the Benton County National Bank, of that city, and one Mrs. Ella Hegley, a resident of that city, were reissued. These warrants had originally been issued against the general revenue fund, but when reissued, the fact was ascertained by the council that they represented a loan that had been made to the water plant, and were accordingly made payable out of the funds of that plant instead of out of the city's general revenue fund. The city complied with the directions of the original decree by transferring from its general revenue fund the sum of $1,000 to the credit of this water fund, and this money was used in cashing a warrant of Mrs. Hegley for that amount. It does not appear how the city raised this $1,000 in cash, for, at that time, and at all times since, the city has been heavily in debt, with no money in its treasury to the credit of the general revenue fund. The city officials contend that they have in good faith obeyed the provisions of this original decree by keeping separate accounts of the waterworks fund, and that they have issued no warrants against that fund except for loans of money actually made for the use and benefit of this plant; and they deny that the indebtedness, which these last mentioned warrants represent, was taken into consideration in the stipulation that the plant had earned the sum of $1,000.

The court found that appellee was entitled to have the original decree enforced, and that all receipts and expenditures had been taken into account in the stipulation; that a net profit of $1,000 had been earned by the waterworks plant, and found that this original decree

had been violated by paying Mrs. Hegley this $1,000, which had been transferred from the general revenue fund to the waterworks fund; and by issuing warrants, payable out of the waterworks fund, for debts contracted prior to the date of the original decree. And the court ordered that the city authorities should repay to this water fund the said $1,000, and that it should relieve the said water fund by depositing to its credit a sum equal to the outstanding warrants so found to have been wrongfully issued, or by calling them in and cancelling them, and the city was given nine months in which to perform the decree. This appeal is from that order of the court.

*E. P. Watson,* for appellant.

*E. B. Wall,* for appellee.

SMITH, J., (after stating the facts). As an owner of property within the improvement district, appellee had the right to sue to prevent the city from wasting, or mismanaging, or improperly diverting, the funds of the improvement district. *Russell* v. *Tate,* 52 Ark. 541; *Jacksonport* v. *Watson,* 33 Ark. 704; section 13, article 16, of the Constitution; section 5485 of Kirby's Digest. But he had no right to demand that the court order the city to construct a water main to his property, and all other questions involved in the original decree were collateral to that one. *Browne* v. *Bentonville,* 94 Ark. 80. As to the court's order, directing the action to be taken with reference to the outstanding warrants, payable out of the water fund, and in regard to their cancellation, it is sufficient to say that their holders are not parties to this proceeding, and the court was therefore without authority to make any order which affects their validity.

We are of the opinion that the court had the authority to direct that these funds be separately kept, and accounted for, and had the authority to make proper orders to enforce that decree, but we think there has been a substantial compliance with its terms, so far as the question could be decided with the parties before the court.

It appears that accounts have been separately kept, and that the $1,000 was actually paid out of the general

revenue fund to the credit of the waterworks fund, although we do not think the court had the authority to administer and direct the expenditures of the city's revenue subsequently collected. The courts can not take upon themselves the burden and responsibility of administering the affairs of the municipalities of the State in the disbursement of their public revenues. The rule in such cases is well stated in the opinion in the former appeal of this case. *Browne* v. *Bentonville,* 94 Ark. 80.

The decree of the court is therefore reversed and this supplemental complaint is dismissed.