PLEDGER *v.* CUTRELL.

4-3571

Opinion delivered July 2, 1934.

*Bridges, McGaughy & Bridges* and *Coleman & Gantt,* for appellant.

*Evan W. Crawford,* for appellee.

JOHNSON, C. J. This is a taxpayer's suit instituted by appellees against appellant, county treasurer of Jefferson County, seeking to permanently restrain and enjoin him as such treasurer from paying out or disbursing any funds now or which may hereafter come into his hands as such treasurer from taxes arising under an eighteen-mill district levy voted by the electors of Pine Bluff Special School District at the annual elections of March 7, 1933, and March 6, 1934.

The cause was submitted for trial and decree upon the following agreed statement of facts:

"1. That Claude Pledger, treasurer of Jefferson County, Arkansas, is *ex officio* the legal custodian of the school funds of Pine Bluff Special School District of Pine Bluff, Arkansas.

"2. That there are now outstanding bonds of said school district of Pine Bluff approximately $490,500 accruing in annual principal and interest installments.

"3. That the form and titles of the printed ballots used in the annual school elections held in the years 1933 and 1934 were:

" 'For General Tax..............................18 Mills.
    For Building Tax.............................. Mills.
    Total tax not to exceed eighteen (18) mills.
    Against Tax ..................................................,'

"4.  All of the bonds of said Special School District were issued prior to act 169 of 1931 upon the following dates, to-wit:

" '(a)  Third Mortgage Bonds, August 1, 1917.'
" '(b)  Fifth Mortgage Bonds, December 15, 1923.'
" '(c)  Sixth Mortgage Bonds, September 1, 1927.'

"5.  All the bonds are secured by mortgages on the various school buildings and pieces of real property belonging to said district and by a pledge executed at the same time with each mortgage on the part of the district, pledging all the income of the district from all yearly taxes for the purpose of paying off and retiring said bonded indebtedness and interest thereon, in yearly installments as same should accrue.

"6.  At the annual school elections in said Special School District of Pine Bluff which were held therein on the 7th day of March, 1933, and the 6th day of March, 1934, there was voted and carried 'For General Tax 18 Mills.' That at neither of said elections was a specific millage tax voted for the payment of 'Bonds or Interest,' * * * nor for 'Building Fund,' nor for 'General School Purposes.'

"7.  That the county board of education on March 10, 1933, after the holding of said election March 7, 1933, did find and certify to the county levying court, as provided by law, that at said school election there was voted for 'School Tax'

" 'For 18 mills..............................................1,573'
" 'For 15 mills.............................................. 1'
" 'For 12 mills.............................................. 7'
" 'For 10 mills.............................................. 25'

as shown by the county educational board record of said Jefferson County, page 117. And the levying court of said county on November 13, 1933, made the 'tax levy' of said school district 18 mills, as shown by county court record BB of said county at page 209. And the county court of said Jefferson County on March

10, 1934, found, determined and adjudged that at the election of said Special School District held on March 6, 1934, the vote was as follows:

" 'For General Tax 18 mills.........................282'
" 'For 10 mills...................................... 2'
" 'For Building Tax................................. 1'
" 'Against Tax ..................................... 14'

And also found and adjudged that the result of said election was 'For General Tax 18 Mills,' as shown by Record BB of the records of the county court of said county at page 254.

"8. That there has been paid into the hands of defendant to the credit of said district from the collection of the 18 mills school taxes so voted therein for the school year 1933-1934 approximately the sum of $45,000, and that additional revenues from said source will be paid into his hands during said year. That all of said revenues are collected under the 'general tax' of eighteen mills mentioned herein.

"9. That during the school year 1934-1935 there will accrue and be paid into the hands of the defendant to the credit of said district revenue in like manner as that mentioned in paragraph 8 hereof.

"10. That during the school year 1933-1934 there will become due the sum of approximately $19,500 of bonds and approximately $24,500 in interest on said bonds; or in the aggregate the sum of $44,000 principal and interest. That of the $45,000 paid into the hands of the defendant, heretofore, a portion of said amount has already been expended by him for the payment of accrued bonds and interest, and further expenditures for said purposes having been pledged will be made by him. That the revenue on said 18 mills general tax approximates $218,000 each year.

"11. That said eighteen mills school tax has thus been customarily voted upon each year and likewise devoted in part to the payment of the yearly accruing installments of the outstanding bonds of the district, since the effective date of the constitutional amendment providing for the eighteen mills school tax.

"12. That the plaintiffs, R. C. Cutrell and E. M. Long, are residents, citizens and taxpayers of Pine Bluff School District No. 3 of Jefferson County, Arkansas."

The chancellor awarded a permanent injunction as prayed, and this appeal is therefrom. The school fund here under consideration arises and accrues exclusively under Amendment No. 11 to the Constitution of 1874, which provides: "The General Assembly shall provide by the general laws for the support of common schools by taxes which shall never exceed in any one year three mills on the dollar on the taxable property in the State, and by an annual per capita tax of one dollar, to be assessed on every male inhabitant of this State over the age of twenty-one years. Provided, that the General Assembly may, by general law, authorize school districts to levy by a vote of the qualified electors of such districts a tax not to exceed 18 mills on the dollar in any one year for the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness for buildings. Provided, further, that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied."

It appears from the 11th amendment last quoted that it levies no taxes and that no tax may be levied thereunder save by an affirmative vote of the qualified electors of the school district in which such levy is sought, and then such levy is limited to 18 mills on the dollar in value for any one year. Therefore it definitely appears that the levy of any tax under this amendment is exclusively optional with the qualified electors in the school district affected. On the question here under consideration we decided in *Horn* v. *Paragould Special School District,* 186 Ark. 1000, 57 S. W. (2d) 568; "Three purposes are named in the amendment (1) 'for the maintenance of schools'; (2) for 'the erection and equipment of school buildings'; and (3) for 'the retirement of existing indebtedness for buildings.' And it is then provided 'that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied.' This appears to be very simple language, unam-

biguous, and not difficult of comprehension. The electors of any school district may vote a tax at any rate they wish for any or all said purposes, provided the tax voted for all does not exceed 18 mills. For instance, they might vote 6 mills for bond and 12 mills for school purposes, as they did in this case, and, when so levied and collected, neither sum could 'be appropriated for any other purpose * * * than that for which it is levied.' In other words, the 12 mills voted for school purposes could not lawfully be appropriated for payment of bonds or the interest thereon, nor could the 6 mills voted for bond purposes be appropriated for schools. Such is the plain language of the amendment. No other construction can be given, and any other in the present case would probably work disaster to both parties. For, since the voting of any tax for any purpose is optional with the district's electors, the taking of the 12 mills voted for general school purposes to pay bonds would close the schools and keep them closed for many years, it would seem reasonably certain the electors would not vote a tax on themselves and have no schools. The bondholders would lose the 6-mill tax now being received, a substantial loss to them, and the district would be without a free public school for years to come, which would be disastrous to it and its people.''

It follows from what we have said that neither creditors nor any one else can acquire a vested right or interest in or to any levy of taxes under Amendment No. 11 or to any part thereof until same has been voted by the qualified electors each year. The question then arises, did the qualified electors in Pine Bluff Special School District at the elections in March, 1933 and 1934, vote a tax or dedicate a part of the tax so voted under amendment No. 11 to the payment of outstanding bonds and interest of the school district? The agreed statement of facts heretofore copied shows that the electors in said school district at the elections aforesaid voted upon the following questions:

"For General Tax"
"For Building Tax"
"Against Tax"

At the election in March, 1933, all votes cast by the qualified electors were in favor of "For General Tax 18 mills" and none were cast in favor of "For Building Tax." At the election in March, 1934, all votes cast by the qualified voters, save one, were in favor of "For General Tax 18 mills" and only one vote was cast in favor of "For Building Tax."

Therefore, it definitely and certainly appears that the qualified electors of Pine Bluff Special School District did not vote a building tax at the elections in said district for either the year 1933 or 1934.

It necessarily follows that, if "For Building Tax" as it appeared on ballots cast by the qualified electors in the elections for 1933 and 1934 has reference to funds for the retirement of bonds and interest thereon owed by the district, then certainly no tax was voted by the qualified electors for this purpose, and the chancellor was correct in so deciding.

Section 66 of act 169 of 1931 defines "Building Fund" as follows:

"A building fund in an amount sufficient to pay the maturities of bonds, principal and interest, as they accrue, of said issue of bonds, that said building fund shall be set aside out of the first revenues of the district from whatsoever source derived, and shall be held by the county treasurer solely in the manner and for the purposes set out throughout this act."

Tested by the definition of "Building Fund" as it appears above, there can be no doubt that the qualified electors of Pine Bluff Special School District at the elections held in 1933 and 1934 refused to vote or dedicate any part of the 18 mills tax for schools to the purpose of paying or retiring the outstanding bonds of said district or the accrued interest thereon.

We cannot agree that the electors by voting in favor of "For General Tax 18 mills" intended to grant to the directors of the school district a discretion in the application of this fund to any purpose authorized by Amendment No. 11. The affirmative vote of the electors "For General Tax 18 mills" dedicated this fund to one

purpose only, and this purpose was neither "Building Fund" nor the "Retirement of existing indebtedness for Buildings." Therefore, the only remaining purpose for which the levy could have been effected under Amendment No. 11 was "For the maintenance of schools."

Therefore, the county treasurer of Jefferson County was without authority in law in paying or asserting the right to pay out any of the funds arising from the 18-mill levy of taxes accruing to the school district under Amendment No. 11 for the retirement of bonds or accrued interest thereon owed by said school district, and the injunction was properly awarded restraining such misapplication of funds.

For the reason stated, the chancellor was correct in awarding a permanent injunction against appellant treasurer, and the decree will therefore be affirmed.

SMITH, J., (dissenting). The case of *Horne* v. *Paragould Special School District,* 186 Ark. 1000, 57 S. W. (2d) 568, upon which the majority of the court relys, does not, in my opinion, support the conclusion which the majority have announced, and I therefore respectfully dissent.

The record is silent as to whether the school directors had complied with the law defining their duties in the matter of holding the election at which the school tax was voted, and we must therefore presume that those duties had been performed. Section 97 of act 169 of the Acts of 1931 (Acts 1931, pages 476-588) defines these duties. Subsection H of § 97 requires the school directors to prepare an estimate of the amount of money needed by the district for the year following the school election, showing separately the amount needed "for general control instruction, operation of the plant, maintenance of the plant, auxiliary agencies, fixed charges, capital outlay, and debt service," and to send a copy of the estimate to the county board of education, and to publish it once a week for three consecutive weeks in a newspaper published in the county at least twenty-five days before the annual election. The obvious purpose of this requirement is to advise the electors what amount of money will be required for school purposes and the uses

to which it will be devoted. This may be done by voting a given number of mills for each purpose, or by voting any number of mills, not exceeding 18, for all purposes, or for a general school tax. It is a matter of common knowledge that the latter is the method ordinarily employed in the districts throughout the State, and it is stipulated that the tax was so voted in the instant case. The tax voted was "For General Tax," and it is respectfully submitted that this does not include any one purpose to the exclusion of any other purpose for which a school tax may be legally voted.

In the Horne case the majority of the electors voted a tax of 6 mills "for the building or bond payment fund and 12 mills for general school purposes," thus specifically limiting to 6 the number of mills for the building or bond payment fund. The remaining 12 mills was not voted for any one of the purposes designated in subsection 4, above quoted, but was voted for all those purposes except for the building or bond payment fund, for which 6 mills was specifically voted.

Not so in the instant case. No certain number of mills was voted for any specific purpose. The electors, on the contrary, voted "For General Tax." Now, what is "General Tax"? The obvious answer is that it is a tax for all purposes for which the electors had authority to vote, leaving to the directors of the school district the duty to apportion the tax collected to the items embraced in the budget which had been submitted to the electors. If the electors are unwilling to confer this authority, they must vote such number of mills for a particular purpose, as was done in the Horne case, *supra*.

The authority to vote the 18 mills is derived from the 11th Amendment to the Constitution, as is said in the majority opinion, and I submit that a vote "For General Tax" includes each and all of these purposes, and it should be assumed, in the absence of a showing to the contrary, that the electors had dedicated the tax to all the purposes shown in the budget report of the school directors.

It must be remembered that the electors voted "For General Tax," and a more comprehensive adjective

could hardly have been employed. Many definitions of the word "general" are given in Webster's New International Dictionary, and these, among others: "Of or pertaining to the whole of a body, society, organization, or the like; pertaining to, affecting, or applicable to, each and all of the members of a class, kind, or order; universal within the limits of the reference; not particular; not precise or definite."

A tax thus voted, when not otherwise limited, as was done in the Horne case, *supra,* covers all items for which the tax may be voted. If this is not true, then no tax whatever was voted. There is no more reason for saying the general tax is applicable for maintenance of schools than it is for the retirement of existing indebtedness. Neither was written on the ballot. The electors might have voted a definite number of mills for either purpose, but they did not do so.

The term "General Tax" is not a synonym for "Maintenance" nor for "Indebtedness," and it, therefore, no more includes one than it does the other, and unless it includes both it does not include either. But it does include both, because a tax for maintenance or to pay indebtedness is a general tax, all being for school purposes and all permissible under both the constitutional amendment and under act 169, *supra.*

As was said in the Horne case, *supra,* the three purposes for which a tax may be voted under the constitutional amendment are: "1) for the maintenance of schools; (2) for the erection and equipment of school buildings; and (3) for the retirement of existing indebtedness for buildings." It is true the printed ballot contained the words, "For Building Tax," which was for the second purpose above-named, but no tax was voted for that purpose. But there is no question in this case about using this money for building purposes. The relief prayed and granted in the court below was that the directors be enjoined from using any of the taxes for the retirement of existing indebtedness (some of which had been outstanding since 1917), the third purpose named in the amendment for which taxes may be voted. There was no specific vote on this question no more than there

was on the first purpose, that of maintenance, and I, therefore, repeat that if a vote "For General Tax" did not authorize an expenditure for the third purpose, there is a lack of authority to expend it for either the first or second.

The decree of the court below should, therefore, be reversed, and the directors allowed to complete the payment of the installment of the bonded debt and interest, a portion of which, according to the stipulation, has already been made.