OAK GROVE CONSOLIDATED SCHOOL DISTRICT No. 9 v. FITZGERALD, TREASURER.

4-5585                                        129 S. W. 2d 223

Opinion delivered June 5, 1939.

508

*Kirsch & Cathey*, for appellant.

*Bratton & Coleman*, for appellee.

SMITH, J. In 1937, the appellant school district obtained from the State Board of Education a loan in the sum of $14,800 from the Revolving Loan Fund. Prior to obtaining the loan the electors of the district voted a continuing levy of 7 mills against the property in the district subject to the tax, pursuant to the provisions of § 11553, Pope's Digest.

Such loans are made for various periods of time, but for not more than 20 years, and are "secured by a mortgage or deed of trust executed to the state of Arkansas, State Commissioner of Education, and his successors in office, as trustee, . . ." The borrowing school district executes what is called a "School Bond," which contains an amortization of the loan, which is effected by annual payments of a sum sufficient to pay the loan and the interest thereon at the end of the period of time for which the loan is made. Coupons are attached to the bond for the amount of these annual payments, and recite the portion thereof due as interest and the amount paid as principal, the two items being the amount of the coupon. These bonds are not sold, but are pledged as security for the payment of bonds issued by the State Board of Education, which the latter had sold in the open market to investors desiring to buy them.

The loan contract by which the school districts borrow money from the Revolving Loan Fund does not contemplate partial payments of these coupons or of any

sum in excess of their face. If an annual payment were made in excess of the coupons due in the year in which the payment was made, another amortization of the loan would be required, if proper credit were allowed for the payment. This could be done only by withdrawing the particular bond which had been pledged as collateral to the bonds of the State Board of Education and reissuing it.

It is contemplated that these coupons shall be paid as they mature. Before the loan is made the State Board of Education is furnished with a statement of the assessed values of property within the school district against which the school tax will be levied, and upon this basis the State Board of Education estimates the number of mills which should be voted by the electors to mature the loan. This number of mills must be voted pursuant to § 11553, Pope's Digest, before the loan is made, and after it has been voted it becomes a continuing levy until the loan has been paid. *Parsons* v. *Barnett*, 189 Ark. 1057, 76 S. W. 2d 83. Section 11554, Pope's Digest, so provides.

By way of additional security for the payment of these loans, § 11557, Pope's Digest, provides that "Should the district default in paying any maturity of principal or interest on said loan, the State Board of Education, the Commissioner of Education, and the county court shall retain from said district all allotments of the State Common School Fund and apply them on the past-due items of principal and interest of said loan, until all past-due items are paid in full."

In the instant case the appellant school district, after making all payments due prior to January 1, 1940, had a surplus of $997.36 which is not required for payment on the Revolving Loan Fund loan, since there are no payments due and none will mature until another year's revenue has been collected under the 7-mill levy. The directors of the school district applied to the county treasurer to permit the surplus to be used for general school purposes. The treasurer refused to do so, and application was made for a writ of mandamus requiring that action.

510

This relief was denied, and this appeal is from that judgment.

It is conceded that § 11555, Pope's Digest, if constitutional, entitled the school district to the relief prayed. That section reads as follows: "The proceeds of such levy and collection shall be set aside from year to year in a separate fund to be known as the 'Loan Fund,' and used for no other purpose than to pay the principal and interest on the bonds herein authorized until all such maturities for such bonds in any year have been paid in full, or a fund sufficient to pay them has been set aside in cash, when the district may use for other school purposes the excess of funds remaining after making annual payments."

The insistence is that the section of the statute just quoted is violative of amendment No. 11 to the Constitution, which amendment reads as follows:

"Section 1. That Article 14, § III, of the Constitution of the State of Arkansas be amended to read as follows:

" 'The General Assembly shall provide by the general laws for the support of common schools by taxes, which shall never exceed in any one year three mills on the dollar on the taxable property in the state, and by an annual per capita tax of one dollar, to be assessed on every male inhabitant of this state over the age of twenty-one years. Provided, that the General Assembly may, by general law, authorize school districts to levy by a vote of the qualified electors of such districts a tax not to exceed eighteen mills on the dollar in any one year for the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness for buildings.

" 'Provided, further, that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied.' "

It will be observed that this amendment permits as much as 18 mills for school taxes to be voted for any one or all of the three following purposes: (a) Maintenance of schools; (b) the erection and equipment of school

buildings, and (c) the retirement of existing indebtedness for buildings.

The 7-mill tax for retirement of existing indebtedness was, therefore, authorized by the Constitution, but it is said that, having been voted for that specific purpose, it may not be used for either of the other two, and the cases of *Horne* v. *Paragould Special School District,* 186 Ark. 1000, 57 S. W. 2d 568, and *Pledger* v. *Cutrell,* 189 Ark. 562, 74 S. W. 2d 646, 75 S. W. 2d 76, are cited to support that contention.

The bonds involved in the Horne Case, *supra,* were issued prior to the passage of act 169 of the Acts of 1931, of which act § 11555, Pope's Digest, herein quoted, was a part, while the bonds here involved were issued subsequent to the passage of act 169. Section 11555, Pope's Digest, must, therefore, be read as a part of the bond contract here involved unless that section is unconstitutional.

In the Horne Case, *supra,* the directors had voted 6 mills for the bond payment fund, and 12 mills for general school purposes in the year 1931, payable in 1932, and taxes were collected pursuant to that levy, but the question of a continuing levy had not been voted upon.

There were maturities of bonds and interest in the Horne Case amounting to over $40,000, which was just $13 less than the total gross receipts of the school district from all sources. The bondholders sought to apply, not only the proceeds of the 6-mill levy, but the entire revenues of the school district from all sources to the payment of matured bonds and interest. In denying the relief prayed it was there said: "The electors of any school district may vote a tax at any rate they wish for any or all said purposes, provided the tax voted for all does not exceed 18 mills. For instance, they might vote 6 mills for bond and 12 mills for school purposes, as they did in this case, and, when so levied and collected, neither sum could 'be appropriated for any other purpose . . . than that for which it is levied.'"

In that case the district was unable to pay its maturing obligations. Not so in this. There was no attempt

there to divert the taxes collected upon the 6-mill levy for refunding purposes. The attempt was to divert to that purpose taxes which had been levied and collected for another purpose, and the holding in that case was that this could not be required.

Here, there is no attempt to divert any part of the taxes derived from the 7-mill refunding levy, required for that purpose, to another, nor is it questioned that the proceeds from the levy are ample to discharge the matured obligations of the district, both principal and interest. If § 11555, Pope's Digest, were construed to permit the use of any part of the 7-mill levy, which was required to discharge the maturities, which it was voted to secure, it would be violative of amendment No. 11. But such is not its purpose, and we do not so construe it. The 7 mills, or so much thereof as is needed, is irrevocably dedicated to the purpose for which it was voted, that of discharging maturities which it was voted to secure, and no part of it may be otherwise used, so long as any part of it is required to pay matured debts. Here, we have a surplus fund after all maturities have been met. The original contract and the district's bond, which evidences it, would have to be annuled or rewritten if this surplus were applied as payment on an indebtedness not due, and if it may not be thus used it must remain idle in the treasurer's hands until the bonds have been discharged.

We do not think it was the purpose of amendment No. 11, as construed in the Horne Case, *supra*, to accomplish any such result. The statute (§ 11555, Pope's Digest) in force when this loan was made had placed a different interpretation upon the amendment. The bondholders cannot—and do not—complain so long as no part of the 7-mill levy required to meet their maturities is not devoted to some other purpose.

Nothing was decided in the case of *Pledger* v. *Cutrell*, *supra*, which opposes this view. No continuing refunding tax had been voted in that case. No part of the tax in that case had been voted for refunding, but the entire tax had been voted for school maintenance, and it was there held that the tax having been voted for that purpose, it could not be used for refunding purposes.

A different question is presented in the instant case. The 7-mill tax was devoted to the purpose for which it was levied, and has accomplished that purpose. An excess of revenue remains after that purpose has been accomplished, and we perceive no reason why this excess may not be used for either of the other two purposes for which school taxes may be levied:

The exact question here presented was not involved in the case of *Merritt v. M. W. Elkins Investment Co.*, 188 Ark. 166, 65 S. W. 2d 15, but the reasoning of that case supports the view here expressed. In that case there was a surplus in the building fund, out of which the lower court had decreed that a broker was entitled to preferential payment for services performed in refunding the district's bonded debt. As to the payment of this obligation out of the surplus fund it was there said: "This surplus then may be used to pay any valid obligation of the district for which a proper warrant has been drawn, and consequently the surplus reverts to and becomes a part of the general fund." It was held, however, that to award the broker the right to a preferential payment out of the building fund surplus was error, but it was there said: "It would appear, therefore, that such surplus, if any, should revert to general funds of the district to be devoted to the payment of any school warrants in the order of their registration, those of the oldest registration having priority."

The effect of that opinion was to order the broker's fee to be paid out of the surplus in the building fund, which surplus became a part of the general fund, but not to be paid preferentially over other holders of warrants having prior registration.

We conclude, therefore, that the district was entitled to the relief prayed, and the judgment denying that relief will be reversed and the case remanded, with directions to award the writ of mandamus against the treasurer, as prayed.