CITY OF STUTTGART v. McCUING.

4-9278 234 S. W. 2d 209

Opinion delivered November 13, 1950.

Rehearing denied December 18, 1950.

*Arthur R. Macom,* for appellant.

*W. A. Leach,* for appellee.

HOLT, J. The City of Stuttgart, in order to supplement a Federal grant awarded to improve its streets, alleys and boulevards, by proper procedure, on October 17, 1935, submitted to its electorate the proposition to issue and sell bonds in the amount of $75,000, for this purpose. The proposed bond issue was approved by a majority vote, and, by proper ordinance, a special tax levy of $3\frac{1}{4}$ mills on all real and personal property was duly levied by the City Council for the calendar years of 1937 to 1939 inclusive, and $4\frac{1}{2}$ mills for the calendar years of 1940 to 1949 inclusive, to retire the bonds and interest, the ordinance also providing for the levy of the tax until the bonds with interest had been paid.

Thereafter, the bonds were sold, the improvements made, and all annual assessments collected up to and including the year 1946, due and payable in 1947. The bonds with interest were retired November 1, 1949, leaving a surplus of $9,435.52 out of the tax collected for the year 1946.

May 9, 1949, by resolution, the City Council directed that this surplus fund be paid into the Street Fund to be used exclusively for constructing, widening and straightening the streets, alleys and boulevards in the city.

Later, October 24, 1949, this resolution was amended to require said surplus to be used for repairs and maintenance of existing streets, as well as for constructing, widening and straightening streets.

On October 29, 1949, appellee, Mike McCuing, a property owner and taxpayer, for himself and all others

similarly situated, brought the present suit to enjoin appellants from disposing of this tax money as directed by the above resolutions and prayed that said surplus be returned to those taxpayers who had paid it.

November 21, 1949, appellants filed a general demurrer on the ground that appellees' complaint failed to state a cause of action. This demurrer was overruled and on appellants' refusal to plead further, final judgment was entered giving to appellees the relief prayed.

This appeal followed.

Two questions are presented: (1) The City Council's authority over the surplus funds in question, (2) The right of appellees to institute suit to recover this surplus.

In effect, appellants contend that since a part, at least, of the 1946 tax levy was required to retire the bonded indebtedness in full and was a lawful tax, this gave the City authority to use the surplus to repair and maintain existing streets, to construct, widen or straighten streets, that this was the purpose for which the tax had been authorized, and therefore, did not contravene Amendment 13 of our Constitution, which forbids the use of tax money, raised for a specific purpose, for any other or different purpose.

Appellees, on the other hand, earnestly contend that the sole purpose for which this special tax was, or could have been levied, was to retire the said bonds and interest when due and any amount collected in excess of the amount so required for this specific purpose, is an unlawful exaction and may be recovered by any taxpayer who paid the tax.

—(1)—

Is authority found in Amendment 13 for the passage of the above resolutions by the City by which it seeks to confiscate and use the surplus funds in the manner indicated? We hold that no such authority is conferred by this Amendment. The exact question presented appears to be one of first impression.

Those provisions of Amendment 13 (which for our convenience we have numbered) material here, are: "(1) Neither the State nor any city, county, town or other municipality in this State, shall ever lend its credit for any purpose whatever; nor shall any county, city, town or municipality ever issue any interest-bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution of 1874, and the State shall never issue any interest bearing treasury warrants or scrip.

"(2) Provided that cities of the first and second class may issue by and with the consent of a majority of the qualified electors of said municipality voting on the question at an election held for the *purpose*, bonds in sums and for the *purposes* approved by such majority at such election. * * *

"(3) For the construction of, widening or straightening of streets, alleys and boulevards within the corporate limits of such municipality. * * *

"(4) In order to provide for the payment of the bonds issued under the provisions of this amendment, and interest thereon, a special tax, not to exceed five mills on the dollar in addition to the legal rate permitted, may be levied by municipalities on the real and personal taxable property therein. And any municipality issuing any bonds shall, before or at the time of doing so, levy a direct tax payable annually not exceeding the amount limited as above, sufficient to pay the interest on such bonds as the same matures, and also sufficient to pay and discharge the principal of all such bonds at their respective maturities. * * *

"(5) And no money raised under the provisions of this amendment by taxation or by sale of bonds for a *specific purpose* shall ever *be used for any other or different purpose.*

"(6) It shall be the duty of the mayor and city council or other governing body established by law, to exercise supervision over the sale of any bonds, which may

be voted by the people at an election *held for that purpose* and they shall expend economically the funds so provided *for the specified purposes* for which they were voted.

"(7) Said election shall be held at such times as the city council may designate by ordinance, which ordinance shall *specifically state the purpose* for which the bonds are to be issued, and if for *more than one purpose,* provision shall be made in said ordinance for balloting *on each separate purpose.*"

The facts are not in dispute. Simply stated, the taxpayers of Stuttgart voted a tax well within the five mills limitation for a specific purpose: "For the purpose of constructing, widening, straightening and paving the streets, alleys and boulevards within its corporate limits," and to issue and sell bonds in the amount of $75,000 for this purpose. This authority was granted to the electorate by paragraphs (2), (3), and (4), of Amendment 13, above. This power was given to the qualified voters within the municipality and not to the City Council. In short, the consent of the people, who were called upon to pay the tax, was first required. Without their consent the City was powerless to act.

Under the plain terms of paragraph (5) above, "no money raised under the provisions of this amendment by taxation or by sale of bonds for a specific purpose shall ever be used for any other or different purpose," the money raised for the specific purpose here, as indicated, could never be used for any other or different purpose. This language is so plain that no judicial construction seems necessary.

As an added safeguard and guarantee against using such surplus tax money for any other purpose, paragraph (7) emphasizes "the purpose" limitation in this language: "Which ordinance shall specifically state the purpose for which the bonds are to be issued and if for more than one purpose, provision shall be made in said ordinance for balloting on each separate purpose."

Here, the surplus fund in excess of the money necessary to retire the bonds with interest and to complete the work for which collected is substantial. It belongs to the taxpayers who paid it and not to the City. We hold that the duty rested on the City to make refund of this surplus as prayed.

From a practical viewpoint, since in all cases of refunds there must be necessary costs attached, such refunds would be subject to the burden of distribution. Obviously, in some instances where excess funds are to be dealt with, the overall cost of refunding might exceed the surplus, or it might be found that in respect of each taxpayer the rule *de minimis non curat lex* (the law cares not for small things) should apply. In such cases, where no taxpayer's claim could be regarded as substantial, no refunds would be required. In all other cases, however, as indicated, refunds should be made upon appropriate demand.

We have not overlooked the case of *Oak Grove Consolidated School District No. 9* v. *Fitzgerald, Treasurer*, 198 Ark. 507, 129 S. W. 2d 223. That case, we think, is clearly distinguishable and in fact supports our views above expressed. There, the following provision of Amendment No. 11 (the 18 mill school tax amendment): "provided further that no such tax shall be appropriated for any other purpose, nor to any other district than that for which it was levied," was considered, and we held that any surplus remaining to the school district, after making all payments due the Revolving Loan Fund loan prior to January 1, 1940, could be used for general school purposes, for the reason that such authority was specifically granted by § 11555, Pope's Digest (now § 80-907 Ark. Stats. 1947), which provides: "The proceeds of such levy and collection shall be set aside from year to year in a separate fund to be known as the 'Loan Fund,' and used for no other purpose than to pay the principal and interest on the bonds herein authorized until all such maturities for such bonds in any year have been paid in full, or a fund sufficient to pay them has been set aside in cash, when the district may use for other school purposes

the excess of funds remaining after making annual payments.''

We also pointed out that the use of such annual surplus would not have been allowed in the absence of such specific authorization.

Here, we are considering Amendment No. 13 (Municipal Improvement Bonds) under which Stuttgart proceeded, which provides that "no money raised under the provisions of this amendment by taxation or sale of bonds for a specific purpose, shall ever be used for any other or different purpose.''

The result reached in the Oak Grove School District case was based upon the legislative direction and the presumption that the money—that is, the surplus—would be used for the same general purpose.

Language of Amendment No. 13 is somewhat stronger than that used in Amendment No. 11; but, whatever the differences may be, we do not feel justified in extending construction of Amendment No. 13 to permit diversion of the fund in question.

—(2)—

Appellants' contention that appellee, McCuing, was without authority to bring the suit is, we think, without merit.

In the circumstances, this surplus is a trust fund being held by the City, as trustee, subject to be distributed to the taxpayers entitled to it. Appellee, as one of the taxpayers, on his own behalf and for others similarly situated, had the right to bring the present suit. What was said in *City of Bentonville* v. *Browne*, 108 Ark. 306, 158 S. W. 161, applies with equal force here: "As an owner of property within the improvement district, appellee had the right to sue to prevent the city from wasting, or mismanaging, or improperly diverting, the funds of the improvement district.''

Accordingly, the decree is affirmed.

GEORGE ROSE SMITH, J., dissenting, with whom LEFLAR and DUNAWAY, JJ., concur, dissenting. On the sur-

face the majority decision seems to be favorable to the taxpayers, since it orders a refund of money that would otherwise be spent for municipal purposes. But the practical effect of today's decision is to order the useless and wasteful expenditure of public funds that may well amount to hundreds of thousands of dollars. I am not convinced that in adopting Amendment 13 the people intended such extravagance.

This amendment, adopted in 1926, authorized bond issues for at least twenty municipal purposes. Almost every city in the State has bonds outstanding under this amendment. The majority decision may apply also to county issues under Amendment 17, as that amendment contains about the same language as that now relied on by the majority. Nearly all our counties have issued bonds under Amendment 17. Both amendments contemplate long-term issues, which are only now beginning to mature. Within the next ten or fifteen years hundreds of these issues will at last be retired. This means that practically every city, and perhaps the counties as well, will suffer from today's decision.

For in every instance there will be a surplus in the bond fund when the last bond is paid. It is manifestly impossible to levy an ad valorem tax that will produce to the penny the sum needed to pay principal and interest. If the bonds are to be sold at par a margin of safety must be allowed for changes in assessed values and for delinquencies in tax payments. That margin of safety makes a surplus unavoidable. The only real question in this case is what should be done with these surpluses.

Four members of the court conclude that these funds must be returned to the taxpayers whenever any taxpayer's claim can "be regarded as substantial." Of course in every city or county there will be at least one public utility company or other large taxpayer whose claim may fairly be said to be substantial. Hence the practical effect of the opinion is to order a refund whenever the cost of the refunding process cannot be expected to consume the entire surplus.

In many cases the expense involved in this refunding procedure will be staggering. Pulaski County, for example, has over 90,000 separate real property assessments and over 60,000 personal property taxpayers. An audit must first be made to determine the exact amount of more than 150,000 separate refunds. Next, the names and addresses of the taxpayers must somehow be ascertained. Many of them will have died; their heirs must be identified. Others will have moved away; their whereabouts must be traced. But this is not all. After an investigation that must invariably extend over a period of years there is still the matter of writing 150,000 checks, addressing that many envelopes, and affixing stamps that will themselves cost over $4,500. And even then, what has been accomplished? An insignificant number of taxpayers will receive refunds of a few dollars apiece, if that much is left after the costs have been charged against the fund. But the overwhelming majority of the taxpayers will receive a few cents each—often not enough to pay for the stamps and stationery that bring them their checks. It is easy to see that dollars must be spent to refund pennies. Naturally the problem is not equally serious in the less populous communities, but likewise the surplus to be wasted will then be relatively smaller.

It is perfectly clear that the majority decision is inconsistent with its own major premise. That premise is that the surplus funds can be used only for the specific purpose for which the tax was levied. But as a result of this opinion far more than half of these funds will be diverted from the original purpose, to be dissipated in the wasteful refunding operations. These taxes certainly were not levied for the purpose of being thrown away with hardly any benefit to the city or its citizens.

If the language of Amendment 13 were so mandatory that the conclusion reached by the majority could not be escaped, then I should be compelled to agree that this court would be powerless to remedy an unfortunate situation. But it seems to me that the plain intent of the amendment is contrary to the decision now announced. The fundamental aim of Amendment 13 is to enable cities

to issue bonds for a wide variety of municipal activities. The clause forbidding the use of tax money for purposes other than that for which the tax was levied was obviously inserted to insure the marketability of the bonds, by providing the bondholder with a certain recourse in the event of default. When the bonds have been retired the whole objective of this clause has been satisfied.

Finally, the case of *Oak Grove Consol. Sch. Dist. No. 9 v. Fitzgerald,* 198 Ark. 507, 129 S. W. 2d 223, cannot be distinguished from the case at bar, even though the majority say that it supports their conclusion. There we construed language in Amendment 11 that is in substance identical with that in Amendment 13. The school district had levied an annual tax of seven mills for the specific purpose of paying bonds that had been issued to borrow money for a building program. That case is even stronger than this one, for the bonds had not yet been paid in full, as is the case here. There was, however, a surplus in each year that was not needed for current maturities. In holding that the constitution did not prevent the use of these annual surpluses for other school purposes we said: "The 7-mill tax was devoted to the purpose for which it was levied, and has accomplished that purpose. An excess of revenue remains after that purpose has been accomplished, and we perceive no reason why this excess may not be used for either of the other two purposes for which school taxes may be levied." So here, the purpose of this tax levy was accomplished when the bonds were paid. The city proposes to use the surplus for additional work on the streets, which is the exact end for which these taxes were levied. It is clear that the language of Amendment 11 has been construed to mean one thing and that of Amendment 13 to mean exactly the opposite. Apparently a test case will yet be needed to determine which of these conflicting interpretations shall be applied to Amendment 17, dealing with county issues.