The Honorable David R. Malone State Senator P.O. box 1048 Fayetteville, AR 72702-1048
Dear Senator Malone:
This is in response to your request for an opinion regarding a temporary one cent sales tax approved pursuant to A.C.A. § 14-164-338 (Cum. Supp. 1993). You state that Washington County voters approved such a tax for six (6) months to finance various capital improvements. Your questions in this regard are as follows:
 If there are insufficient funds to complete all of the capital projects for which the tax was dedicated, must the moneys remaining be refunded? Must they be expended immediately? Or, may they be held in a special account until such time as there are additional revenues form other sources to complete the projects?
A conclusive answer to these questions will require consideration of the particular facts and circumstances surrounding the tax levy, including the language of the ballot title and relevant ordinance. As a general matter, however, it is my opinion that an argument likely exists in favor of a required refund of unexpended sales tax proceeds that would otherwise have financed the capital project(s) had the levy under §14-164-338 been sufficient. Subsection (a) of § 14-164-338 states in relevant part as follows:
 If the legislative body determines that a sales and use tax of one percent (1%) or less authorized by § 14-164-327 would, if levied for no longer than twenty-four (24) months, produce sufficient revenue to finance capital improvements of a public nature without resorting to a bond issue, the legislative body may dispense with the issuance of bonds, levy the tax for no longer than twenty-four (24) months, and appropriate the resulting revenues. . . .
The purpose of this legislation was to authorize the financing of capital improvements on a so-called "pay-as-you-go" basis, without bond issues or a delay in commencing the improvements. See Acts 1988 (4th Ex. Sess.), No. 25, tit. and emerg. cl.; see also generally Hasha v. City ofFayetteville, 311 Ark. 460, 845 S.W.2d 500 (1993). It presupposes that the proposed tax will, as determined by the legislative body, produce sufficient revenue to finance the improvement(s). A.C.A. §14-164-338(a), supra. See also Hasha, 311 Ark. at 464 (stating that a city can construct "pay-as-you-go" capital improvements by levying a "bond penny" under § 14-164-338 for twelve months "when that penny, over a twelve-month period, will be sufficient to construct the improvement").[1] It requires that the voters approve the tax "and the purpose of the capital improvements. . . ." Id.
The question, therefore, as I understand it from your correspondence, is how to dispose of sales tax revenues levied under § 14-164-338 where moneys remain because the levy was insufficient to complete all of the improvements.
Although there are no reported cases addressing the precise issue, it is my opinion that as a general matter, a taxpayer refund claim might be premised in that instance upon an "illegal exaction" theory. An illegal exaction is an act that is not authorized or that is contrary to law.Hartwick v. Thorne, 300 Ark. 502, 506, 780 S.W.2d 531 (1989). Neither fraud nor bad faith must be shown. Id. The Arkansas Supreme Court has identified two categories of illegal exactions: "public funds" exactions, where there is a misapplication of funds or the recovery of funds wrongly paid to a public official, and "illegal tax" exactions where the legality of the tax itself is at issue. See Martin v. CoueyChrysler Plymouth, Inc., 308 Ark. 325, 331, 824 S.W.2d 832 (1992),citing Pledger v. Featherlite, 308 Ark. 124, 823 S.W.2d 852 (1992) andBrewer v. Hawkins, 242 Ark. 460, 408 S.W.2d 492 (1966).
Because your question envisions the ultimate use of the funds to complete the projects, the "public funds" type of exaction is arguably not implicated. Rather, the inquiry focuses, in my opinion, upon the legality of the tax. As noted above, § 14-164-338 contemplates that the proposed tax will be sufficient to pay for the improvement(s) approved by the voters. There is no established or required time limit required for completion. I thus cannot conclude, in response to your question, that the tax proceeds must be expended immediately. The question, however, is whether the funds may be held and then supplemented by other revenues in order to complete the projects. While a conclusive answer would probably require reference to the ballot title as the "final word of information and warning to which the electors had the right to look" (Arkansas-Missouri Power Company v. City of Rector, 214 Ark. 649, 654,217 S.W.2d 335 (1949)), it is my opinion that the answer to this question is generally "no." If the proceeds of the sales tax levy under §14-164-338 do not alone suffice to accomplish the approved purpose(s), an illegal exaction may have occurred, giving rise to a refund claim as to revenues remaining.
The case of City of Rector, supra, although factually distinct, offers some general guidance in addressing the matter. At issue in that case was a bond issue for the purpose of building a power plant and distribution system. After the bonds were approved, it was announced that the amount of the issue was insufficient to build the structures. In declaring the bond issue to be an illegal exaction, the court held that the voters were entitled to look to the title, preamble and body of the ordinance or the proposition to be voted on as listed on the ballot in order to ascertain what they were asked to approve. 214 Ark. at 654. The court stated:
 The ballot title is the final word of information and warning to which the electors had the right to look as to just what authority they were asked to confer, and we think its implication and ordinary meaning is that it was proposed to construct the plant with the proceeds of the bond sale. There is no intimation that the proceeds of the bonds were intended merely to supplement other sources of revenue.
Id. at 654-655.
The court found that there was nothing to indicate that the bond issue "was to partially construct an electric light plant and distributing system, or merely to contribute to the cost thereof." Id. at 654. It did note that the issue would not have been defeated by the insufficiency had the electors been advised that they were voting for a supplementary source of revenue. Id. at 655. But, according to the court, "the electors had the right to be correctly advised as to the Council's plans." Id. at 656. And the court went on the note: "It is readily conceivable that the electors might consent to the erection of a plant costing only $65,000 and yet be unwilling to consent to the erection of a plant costing much more. . . ." Id.
Applying this analysis to the question at hand, it may reasonably be surmised that the message conveyed to voters asked to approve a sales tax levy under § 14-164-338 is that the tax will be sufficient to finance the proposed project(s). Indeed, the entire premise of § 14-164-338 is that the legislative body has determined that the tax will "produce sufficient revenue" to finance the capital improvement(s). A.C.A. § 14-164-338(a) (Cum. Supp. 1993), supra. If the project(s) approved by the voters under § 14-164-338 cannot be financed with the tax that was voted on, it might be successfully contended that the purpose of the tax has failed, notwithstanding the availability of other revenues to complete the project(s). And according to the Arkansas Supreme Court, "[a]n illegal exaction occurs when the purpose of a tax cannot be accomplished and the government retains the tax funds." Hasha v. City of Fayetteville, supra,311 Ark. at 470, citing Hartwick v. Thorne, supra. Further buttressing the illegal exaction argument is the possibility, noted in City ofRector, supra, that the electors might have been unwilling to consent to the tax had they known that it would not be sufficient to finance the approved capital improvements.
It should be noted, however, that whether a refund is ultimately required may depend upon the particular facts. Consideration may have to be given to the amount of moneys remaining in relation to the total collected and expended, in light of the rule "de minimis non curat lex" (the law cares not for small things). See generally City of Stuttgart v. McCuing,218 Ark. 34, 234 S.W.2d 209 (1950). The court in McCuing noted that this latter rule should apply if no taxpayer's claim could be regarded as substantial. 218 Ark. at 39. The overall cost of refunding in relation to the amount remaining may also be a factor to consider. Id.
I cannot speculate regarding a court's resolution of fact questions that may arise due to the size of the remaining tax proceeds. It is my opinion that as a general matter, a refund may well be required. The specific factual context and particularly the ballot title language must, however, be considered.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] The section was subsequently amended to authorize a tax levy of one percent (1%) or less for no longer than twenty-four (24) months.