HORNE *v.* PARAGOULD SPECIAL SCHOOL DISTRICT No. 1.

4-2873

Opinion delivered February 20, 1933.

L. P. *Biggs*, *Wallace Townsend* and *Elcock & Martin*, for appellant.

*W. F. Kirsch* and *Horace Sloan*, for appellee.

McHANEY, J. Appellee, an urban special school district, of Paragould, Arkansas, brought this action against appellant, county treasurer of Greene County, in which the city of Paragould is located, to enjoin him from paying out on bond issues of the district, both maturities and interest, that part of the 18-mill school tax voted by the electors of the district, under Amendment No. 11 to the Constitution, for general school purposes, in the year 1931, payable in 1932. A 6-mill tax was voted for the building or bond payment fund and 12 mills for general school purposes. The bonds were all issued prior to the passage of act 169, Acts of 1931, and totaled approximately $400,000 now outstanding. The complaint alleged that "said bond issues (were) secured by various pieces of real estate belonging to said district, and, in addition, by an attempted pledge on the part of the district of all of the income of the district for the purpose of paying off and retiring said bonded indebtedness, together with the interest thereon." It was further alleged that the collector of the county had collected school taxes in the district, so voted, as above stated, in the year 1932 for the tax of 1931, in the sum of $33,061.86, and that additional revenues to accrue to the district from the State for the school year 1932-1933 are estimated at $7,518.64, or a total revenue of $40,580.50, one-third of said sum of $33,061.86, or the sum of $11,020.62 being

voted by the electors of the district and set aside for the retirement of bonds and interest, and the remainder being available for general school purposes; that during the school year 1932-1933 bond maturities and interest will amount to $40,567.50, just $13 less than the total gross revenue of the district from all sources; that the whole of the sum voted by the electors for bond retirement had been paid out by appellant for such purpose, and that, unless restrained, he would pay out the remainder of the funds now in his hands, $15,605.75, thereby using all the 18-mill tax so voted and all other available revenue, so that no schools could be conducted in said district.

To this complaint a demurrer was interposed by appellant, which was overruled by the court, and, on his declining to plead further, he was perpetually enjoined in accordance with the prayer of the complaint.

The issue to be determined by this court on this appeal is succinctly stated by counsel for appellee as follows: "Whether or not the directors of an urban special school district under the law as it stood at the time of the issue of the said bonds had authority of law to make, without submission of the question to the electors of the district, a pledge of all the proceeds of the 18-mill tax for the sole purpose of paying bonds and interest when future levies thereof were not and could not be within the control of the school board (or of the Legislature itself, for that matter) but depended for their existence on the favorable annual vote of the electors of the district."

Only the 12-mill tax voted by the electors is involved. Appellant claims the right, by virtue of the pledge of all the income of the district for the payment of bonds, made by the directors of appellee district when the bonds were issued, to pay out the proceeds of said 12-mill tax to the retirement of bond maturities and interest, thereby closing the schools. Whereas appellee contends that the directors had no power to pledge revenue or income of the district, which was uncertain and contingent on a vote of the electors of the district annually. It appears to be conceded by appellee (a point we do not decide) that all revenue, save and except the amount voted annually by

the electors for general school purposes, including the State tax of 3 mills, the tobacco and severance taxes and the amount voted for bond purposes, is subject to the payment of bonds and interest.

The framers of the Constitution of 1874, recognizing the great importance of educational advantages for all the children of the State through a system of free public schools, imposed on the State the duty of establishing and maintaining such schools in the following eloquent language in § 1, article 14: "Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free schools whereby all persons in the State between the ages of six and twenty-one years may receive gratuitous instruction."

The same Constitution by § 3, of article 14, provided for the levy of a tax for such purpose as follows: "The General Assembly shall provide by general laws for the support of common schools by taxes, which shall never exceed in any one year two mills on the dollar on the taxable property of the State, and by an annual *per capita* tax of one dollar, to be assessed on every male inhabitant of this State over the age of twenty-one years. Provided, the General Assembly may by general law authorize school districts to levy by a vote of the qualified electors of such district a tax not to exceed five mills on the dollar in any one year for school purposes. Provided, further, that no such tax shall be appropriated to any other purpose nor to any other district than that for which it was levied."

By amendments adopted in 1907 and 1917, the maximum rate that might be voted was increased to 7 and 12 mills respectively, and by Amendment No. 11, adopted in 1927, it was provided as follows: "The General Assembly shall provide by the general laws for the support of common schools by taxes which shall never exceed in any one year three mills on the dollar on the taxable property in the State, and by an annual *per capita* tax of one dollar, to be assessed on every male inhabitant of this

State over the age of twenty-one years. Provided, that the General Assembly may, by general law, authorize school districts to levy by a vote of the qualified electors of such districts a tax not to, exceed 18 mills on the dollar in any one year for the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness for buildings. Provided, further, that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied."

By act 63 of 1927, p. 177, enacted pursuant to Amendment No. 11, it is provided: "That the qualified electors of the school districts at any annual school election may, in accordance with election procedure provided for by law, levy any rate of school tax they may desire. Provided that no rate voted shall exceed 18 mills on the dollar." It will be noticed that the act is not so explicit as the amendment itself, in that it fails to designate the purpose for which the electors may vote the tax up to 18 mills. Three purposes are named in the amendment (1) "for the maintenance of schools"; (2) for "the erection and equipment of school buildings"; and (3) for "the retirement of existing indebtedness for buildings." And it is then provided "that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied." This appears to be very simple language, unambiguous, and not difficult of comprehension. The electors of any school district may vote a tax at any rate they wish for any or all said purposes, provided the tax voted for all does not exceed 18 mills. For instance, they might vote 6 mills for bond and 12 mills for school purposes, as they did in this case, and, when so levied and collected, neither sum could "be appropriated for any other purpose * * * than that for which it is levied." In other words, the 12 mills voted for school purposes could not lawfully be appropriated for payment of bonds or the interest thereon, nor could the 6 mills voted for bond purposes be appropriated for schools. Such is the plain language of the amendment. No other construction can be given, and any other

in the present case would probably work disaster to both parties. For, since the voting of any tax for any purpose is optional with the district's electors, the taking of the 12 mills voted for general school purposes to pay bonds would close the schools and keep them closed for many years, it would seem reasonably certain the electors would not vote a tax on themselves and have no schools. The bondholders would lose the 6-mill tax now being received, a substantial loss to them, and the district would be without a free public school for years to come, which would be disastrous to it and its people.

Appellant contends that § 8977, Crawford & Moses' Digest, and the decisions of this court in *Schmutz* v. *Special School District of Little Rock,* 78 Ark. 119, 95 S. W. 438, and *Am. Ex. Trust Co.* v. *Trumann Special School Dist.,* 183 Ark. 1041, 40 S. W. (2d) 770, support his contention that all the revenue may be pledged. Said section provides: "To borrow money and mortgage the real property of the district as security therefor under such conditions and regulations as to amount, time and manner of payment as the board of directors of said school district shall prescribe." This section authorizes the directors to mortgage the real property of the district to secure the money borrowed, and permits them to fix the time and manner of payment. It does not authorize them in specific terms to pledge any revenue, and it could not authorize them to pledge any part of the 18-mill tax voted for any other purpose. Neither the Schmutz nor the Trumann Special School District case, *supra,* discussed the exact question now under consideration. In the latter case, after quoting from the former, it is said: "The board of directors could not have limited the liability of the district to the payment of the bonds out of the revenues set aside for 'the building fund,' if one had been provided, since they were and are a charge against the whole revenues of the district."

What the court meant by a "charge against the whole revenues of the district" was the whole of its certain revenue, or revenue from fixed sources, such as the 3-mill

State tax, poll tax, tobacco tax, severance tax, such bond fund tax as might be, if and when voted, but not that part of the optional tax voted for school purposes. We think these and other cases cited by appellant are not in point, for the reason they do not have the same background of fact.

Nor is this repudiation as contended by appellant. It is merely postponement of payment of an obligation because of lack of available funds legally bound therefor. It is quite probable, although the complaint fails to show the date of the bond issues outstanding, that, when many of said bonds were issued, the maximum amount permitted to be voted was 5 mills or 7 mills; if so, certainly when the electors tax themselves 6 mills for such purpose at this time, the bondholders are getting all they could in equity and good conscience demand.

Affirmed.