HOUSTON SCHOOL DISTRICT No. 39 OF PERRY COUNTY *v.* COMMERCIAL NATIONAL BANK OF LITTLE ROCK.

4-5877 . 135 S. W. 2d 677

Opinion delivered January 15, 1940.

· *J. M. Willemin,* for appellant.

*Wallace Townsend* and *A. E. Townsend, Jr.,* for appellee.

GRIFFIN SMITH, C. J. The question as stated by counsel for appellants is, Does act 326, approved March 19, 1939, authorize Houston School District No. 39 of Perry county to use for any purpose other than the retirement of bonds moneys arising from a nine-mill tax levy?

The applicable part of act 326 is printed in the margin.[1]

We think there is this additional question: Was there a surplus in the bond account?

The school district (hereinafter referred to as the district) and the county treasurer were defendants below.[2]

In 1928 the district issued $16,000 of 5 per cent. bonds. December 28, 1938, principal and interest in default amounted to $4,000. Between 1928 and 1938 assessed valuation of taxable property had decreased to $127,704 from $180,231.38.

Through Arkansas Municipal Bond Bureau of Little Rock the district consummated a refunding plan whereby $16,000 of new bonds bearing 4 per cent. interest would be exchanged for the old securities. The bureau acted as agent for holders of the 1928 issue and was authorized by the district to submit the refunding proposal. It contained the following features:

"The district agrees to vote a continuous and irrevocable tax of 9 mills for debt service, the entire proceeds of which can be used only for payment of the bonded indebtedness under the following provisions: (1) Upon receipts of final settlement of taxes in each year, the trustee[3] will set aside sufficient money to pay interest on refunding bonds due prior to the next tax settlement date. (2) The surplus remaining in the debt fund after payment of interest as above must be used to pay refunding bonds on sealed tenders to be submitted on the 15th day of November in each year, or by call at par and

---

1 The second paragraph of § 2 of act 326 of 1939 is: "No part of any building fund shall be used for any other purpose in any year than to pay the bonds and interest thereon maturing that year and any that may be past due, until such maturities are paid in full or until the funds are set aside to pay the full amount of such bonds; provided, that the surplus in any year over and above the amount necessary to pay bonds and interest maturing that year, whether hereafter or heretofore issued, may be used by the respective school districts for any other school purposes."

2 The full style of the case is Houston School District No. 39 of Perry County, Arkansas, and Claude Flewellen, Treasurer of Perry County, Arkansas, v. The Commercial National Bank of Little Rock, Arkansas, and Paul D. Speer, of Chicago, Illinois, Trustee.

3 The trustees are identified in the preceding footnote.

accrued interest, whichever is cheaper. If for any reason the district fails to retire bonds by purchase on tenders or call at par and accrued interest, then outstanding bonds in the aggregate par value of the surplus in the debt fund, after paying interest, will automatically mature on January 1 in numerical order, and the holders thereof can demand payment and will have all the remedies and recourses as if the bonds carried serial maturity dates.''

Upon the basis of the proposal of which the quotation is only a part, holders of the 1928 issue surrendered the bonds for those dated January 1, 1939. The district applied to the state board of education for approval of the plan, which was given February 10, 1939.

On the district's petition to the Perry county court, the proposal was submitted to voters at a special election held in May, 1939. The question was whether a continuing building fund tax of nine mills should be approved. On the ballot appeared the explanation shown in the fourth footnote.[4] All votes cast were in favor of the proposal.

Following approval by the electorate the district adopted a resolution creating a building fund. It was provided that all revenues derived from the nine-mill tax should be paid into this fund, . . . ''to be kept solely for the payment of refunding bonds, interest thereon, interest accrued on outstanding bonds, and expense of refunding, as set out in the deed of trust.'' There was a further provision that if in any year revenues from the nine-mill tax were not sufficient ''. . . to meet the amount hereinafter appropriated out of said building fund in that year, the amount of the deficit shall be set aside and paid into said building fund from

---

[4] "The building fund is for a proposed issue of refunding bonds of $16,000 which will run for 25 years, and whatever number of mills is voted for the building fund will be a continuing levy of that amount annually on the real and personal property now embraced in this district, until said bonds and interest are paid, and that shall be the effect of this election. The expense of refunding and any past-due interest on the present outstanding bonds may be paid from this building fund. Voting for this building fund means setting apart from the 18 mills already voted for school purposes nine mills for the purposes above set out and does not increase the total school tax."

the first moneys coming to the district from any source whatever."

There were additional express pledges that none of the money accruing to the building fund should be applied to any other purpose ". . . until said bonds and coupons are paid."

On the fact of the bonds this language appears:

"The school district may use the available surplus in any year, after providing for the payment of all interest due prior to the following tax settlement date, for the purchase of bonds of this issue on tender at not exceeding par and accrued interest, in the manner more specifically provided for in the deed of trust and pledge securing this bond issue. This bond, and all other bonds of this series, shall be redeemable by the district on January 1st of each year after date hereof, in numerical order, at par and accrued interest. Notice of such call for the redemption shall be published once a week for two weeks before the date fixed for redemption, in a newspaper, . . . and after the date mentioned in said call, this bond, if so called, will cease to bear interest, provided funds for its payment are on deposit with the paying agent at that time."

Various covenants in the deed of trust are copied in the complaint, and were especially pleaded, material parts of which have been referred to.

Appellants call attention to § 11500 of Pope's Digest, and to act 326 of 1939, and say: "The difference in act 326 as it amends § 11500 seems to be that under the 1939 act, the surplus remaining after payments due for the current year [have been made] may be used for general purposes."

There is this contention by appellants: "In view of the fact that no bonds will mature until January 1, 1964, any sum in the building fund remaining after the payment of interest is a surplus. . . . If effect is given to the deed of trust, notwithstanding the provisions of act 326, . . . then the appellants must fail, be-

cause according to the deed of trust there could never be a surplus in any fund, as the deed of trust attempts to bind any and all funds to the payment of the bonds, which, of course, it cannot do.''

It is then insisted that the contract is controlled by act 326.

We do not think that the pledge (to apply to bond purposes all revenues arising from the nine-mill tax) is in derogation of the statute. The latter has reference to a surplus. In the case at bar there can be no surplus because all of the money must be remitted to the trustees for application to bonds and interest in the manner set out.

Act 326 does not prohibit a school district from contracting for the use of any otherwise permissive revenues in payment of bonds.. It only authorizes districts to use for other school purposes any year's surplus ''. . . over and above the amount necessary to pay bonds and interest maturing that year.'' ·

This, in substance, is what was held in *Oak Grove Consolidated School District No. 9* v. *Fitzgerald, Treasurer*,[5] decided June 5th of last year. It was there said: ''Here we have a surplus fund after all maturities have been met. The original contract and the district's bond, which evidences it, would have to be annulled or rewritten if this surplus were applied as payment on an indebtedness not due, and if it may not be thus used it must remain idle in the treasurer's hands until the bonds have been discharged.''

In *Horne* v. *Paragould School District*[6] the holding was that ''The electors of any school district may vote a tax at any rate they wish [within constitutional limitations]. . . . The twelve mills voted for school purposes could not lawfully be appropriated for payment of bonds or the interest thereon, nor could the six mills voted for bond purposes be appropriated for schools.''.

5 *Ante* p. ..... , 129 S. W. 2d 223.
6 186 Ark. 1000, 57 S. W. 2d 568.

To the same effect is *Pledger* v. *Cutrell.*[7]

The construction of the contract and law, as reflected by the chancellor's decree, is correct.[8]

Affirmed.

---

[7] 189 Ark. 562, 74 S. W. 2d 646, 75 S. W. 2d 76.

[8] The decretal order is as follows: "It is therefore by the court ordered, adjudged and decreed that, until all the bonds and interest of the refunding issue of January 1, 1939, are paid in full, the defendants are hereby restrained from diverting any part of the proceeds of the nine mill building fund tax for any purposes other than those set out in the deed of trust and pledge; that the defendant district and the defendant county treasurer deposit the proceeds of the said nine mill building fund tax with the trustee when and as received from the county collector; that they use all of the available surplus in said building fund, after providing for the payment of interest maturing that year, for the retirement of the district's refunding bonds either on tender, or by call at par and accrued interest, as set out in the covenants of the deed of trust securing said bonds; that any unused balance too small to be used for retiring bonds on tender or call be held in the building fund to supplement the funds available for tender or call the following year; that no warrants be drawn against the building fund, nor paid by the defendant treasurer, except warrants for the purposes set out in the deed of trust and pledge securing the refunding bonds: and that plaintiffs have their costs herein."