JENSON v. SPECIAL SCHOOL DISTRICT No. 6 OF HOT SPRINGS.

4-5913                                            136 S. W. 2d 169

Opinion delivered January 29, 1940.

*Leland F. Leatherman,* for appellant.

*Martin, Wootton & Martin* and *Murphy & Wood,* for appellee.

McHANEY, J. The purpose of this litigation is to have this court construe act 194 of 1939, as applied to the condition in which appellee school district finds itself relative to its non-bonded indebtedness. Perhaps many other school districts in the state are similarly situated. The facts are stipulated and are as follows:

"1. The outstanding non-bonded indebtedness as of June 30, 1939, amounted to $101,000.

"2. Cash on hand as of July 1, 1939, amounted to $2,291.28.

"3. Proceeds of taxes collected during calendar year, January 1, to December 31, 1939, will amount to $100,000, of which amount $54,000 was collected and paid out prior to June 8, 1939, for operation of schools during fiscal year 1938-39.

"4. Net proceeds from all other sources for fiscal year 1939-40 will amount to $53,000.

"5. Cost of operating and maintaining schools for regulation nine months' term during fiscal year 1939-40 will amount to $155,291.28.

"6. The above items of income and expense do not include moneys received or expended in connection with bonded indebtedness of the district.

"7. At a regular meeting held November 8, 1939, the directors of the district adopted and approved a budget for operation and maintenance of the schools for the fiscal year 1939-40, (attached as Exhibit 'A') and further adopted a resolution authorizing and directing its president and secretary to enter into contracts for purpose of financing the payment of its warrants. (Resolution attached as Exhibit 'B'.)

"8. That the district will during the fiscal year 1939-40 incur obligations and issue warrants to the amount of $155,291.28.

"9. That the maximum non-bonded indebtedness at any time reached during fiscal year 1938-39 was $127,000.

"10. Warrants will be issued from time to time in such amounts that the maximum non-bonded indebtedness reached during the fiscal year 1939-40 will be $127,000.

"11. That the district will not have sufficient cash on hand or to its credit with the county treasurer to pay warrants issued from time to time, and in order that such warrants may be cashed, the president and secretary will enter into contracts with banks or individuals to purchase warrants so issued at par and compensate for such services; or enter into contracts for advancement of money to purchase said warrants at par and pay interest on sums so advanced at a rate not exceeding 7

per cent., and will issue warrants for the payment of such compensation.

"12. That the total amount of warrants issued during fiscal year 1939-40, including warrants issued as compensation to purchasers of said warrants, will not exceed the cash on hand July 1, 1939, the proceeds from local taxes for calendar year 1939, and net proceeds from all other sources; and that the maximum non-bonded indebtedness reached during fiscal year 1939-40 will not exceed the maximum of the preceding year.

"13. The State Board of Education, finding an emergency to exist, authorized the board of directors of said district in accordance with the last paragraph of § 97 (L) of act 169 of 1931, to borrow moneys in amounts not in excess of the maximum non-bonded indebtedness of preceding year, from next year's revenue and issue warrants in anticipation of such revenue and make arrangements with banks or individuals to carry said warrants, and to pay such purchasers compensation or interest for carrying said warrants. (Copy of resolution attached as Exhibit 'C'.)

"14. Defendant Henry Murphy, treasurer of Garland county, will register all warrants so issued and pay same in order of registration.

"15. If the district is not authorized to consider all of the taxes collected during calendar year 1939 as revenue, then schools will be forced to close February 1, 1940, resulting in a five months' term."

Section 1 of said act 194 fixes the school fiscal year as beginning July 1, and ending June 30, following. Section 2 defines "revenue receipts" specifically as: "(1) Net cash balance on hand at the beginning of the school fiscal year, July 1. (2) The net proceeds of local taxes collected during the calendar year (January first to December thirty-first, inclusive) in which the school fiscal year starts (July 1); and (3) The net proceeds of all other funds placed to the credit of the district during the fiscal year from regular revenue sources, including tuition receipts, fees, etc."

Section 3 provides: "The amount of obligations incurred by a school district for any school year shall not

be in excess of the revenue for that year as determined by § 2 of this act; provided that school boards may issue post dated warrants for the purpose of purchasing school buses and school equipment. Warrants drawn for this purpose must be paid within four years of date of issuance. The amount of the warrant or warrants drawn to cover payment of school buses and school equipment shall be registered and charged against the budget of the school fiscal year in which it becomes due, and it shall be paid out of the revenue for that school fiscal year; provided further that in case of an emergency as now provided by law the State Board of Education may grant special permission to a district to create temporary current indebtedness.

"Warrants shall not be issued in one school fiscal year to cover obligations incurred in another school year except as provided herein. All warrants issued in excess of the revenue of a district for the school fiscal year except as herein provided are null and void."

The title of the act is "to define a school fiscal year and to limit the expenditure of school boards to the amount of the revenue for a school year." It did not have an emergency clause and, although approved March 9, 1939, it did not become effective until June 8, 1939. Plainly, the purpose of the act was to prohibit school districts from continuing to pile up non-bonded indebtedness and to limit them in the obligations incurred in any fiscal year to the amount of the revenue for that year as determined by § 2, with but two exceptions: (1) for the purchase of school buses and equipment, and (2) "in case of an emergency as now provided by law the State Board of Education may grant special permission to a district to create temporary current indebtedness." Just what "an emergency as now provided by law" may be is not here determined, but it seems certain it could not consist of indebtedness incurred prior to the passage of said act 194.

The agreed statement of facts discloses that appellee district had incurred an outstanding non-bonded indebtedness during the school year 1938-39 of $127,000; that on June 30, 1939, it still owed $101,000; that the district had

received from taxes during the calendar year 1939, $100,-000 of which amount $54,000 was collected and paid out prior to June 8, 1939, for the operation of schools during the 1938-39 fiscal year; that it had $2,291.38 on hand July 1, 1939, and will collect during the remainder of the fiscal year 1939-40 the sum of $53,000; and that "it will be necessary for the district, in the operation and maintenance of schools for the fiscal year 1939-40, to issue warrants from time to time during said fiscal year in such amounts that the aggregate of the maximum non-bonded indebtedness of the district for the 1939-40 fiscal year will be $127,000." This suit challenges the right of appellee to incur a maximum non-bonded indebtedness during the fiscal year 1939-40 of $127,000, since it had, prior to June 8, 1939, paid out $54,000 of its revenue on existing indebtedness or on current expenses; and also challenged appellee's right to finance its outstanding warrants in the manner set out in stipulation No. 11, and particularly to pay interest or brokerage. Trial resulted in a decree dismissing appellant's complaint for want of equity, hence this appeal.

It is agreed in stipulation 12 that the plan of operation outlined will not result in an increase of indebtedness during the fiscal year, including the compensation to be paid to purchasers of warrants at par or to be paid as interest to lenders of money to the district with which to pay warrants in cash. So long as this condition remains a fact, we can see no valid objection thereto under said act 194. In other words, the act authorizes school districts to incur obligations during any school year in a sum not in excess of the revenue for that year, as defined in § 2, without regard to previously existing indebtedness; and, if it pays a portion of said indebtedness out of current revenue, it may incur current indebtedness in a like sum. Here the maximum outstanding indebtedness for the fiscal year 1938-39 was $127,000. On July 1, 1939, the beginning of the new fiscal year, it had outstanding a total of $101,000, showing a reduction of $26,000 which came about by payment out of the revenue for the calendar year of 1939. So, it would appear that the appellee can incur indebtedness not in

excess of $127,000, during the fiscal year 1939-40, but this includes all the indebtedness mentioned in stipulation 12.

In this respect said act 194 is not essentially different from amendment No. 10 to the Constitution where city and county officials are prohibited from making contracts and allowances "in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; . . ." Under this amendment, we held, in *Polk County* v. *Mena Star Co.*, 175 Ark. 76, 298 S. W. 1002, that: "the levying board may appropriate the total revenue and the county court may make contracts and allow claims for all the revenue of any fiscal year, regardless of other indebtedness existing at the time of the adoption of the amendment, and regardless of other indebtedness incurred subsequent thereto, provided same was not in excess of the revenue for the year in which it was incurred." This rule has been stated in many cases. See *Miller* v. *State, use Woodruff Co.*, 176 Ark. 889, 1 S. W. 2d 998, where it was held to quote a headnote: "While a county cannot increase the amount of its existing indebtedness by incurring debts in excess of its current revenue, it is not an increase of indebtedness within Amendment 11, (10) where a county, which cannot redeem all outstanding indebtedness, at the beginning of a fiscal year issues warrants which cannot be redeemed through lack of funds, but which, when issued, are not in excess of indebtedness outstanding at the end of the prior fiscal year."

As to the power of the district to borrow money and pay interest therefor to finance teachers' salaries and other current expenses, we think this power is granted by § 11535, Pope's Digest, being § 97 of act 169 of 1931. A proviso therein reads: "Provided, nothing in this provision shall prevent any school board from borrowing money from banks, individuals or from next year's revenue in order to provide funds in such amount that the maximum non-bonded indebtedness of their school districts so incurred shall not be greater than the maximum non-bonded indebtedness of such districts was at any time during the preceding fiscal year." We do not think the power thus conferred to borrow money from banks

and individuals was repealed by said act 194, but the power to borrow from next year's revenue was repealed by the express provision of § 3 of said act 194 where it provides: "Warrants shall not be issued in one school year to cover obligations incurred in another school year except as provided herein." There is no express repeal of the other power conferred by the proviso above quoted and repeals by implication are not favored. We see no other inconsistency or repugnance between the two acts.

The power to borrow money conferred on school districts carries with it the power to issue evidences of indebtedness therefor and to pay interest thereon. *Schmutz v. Special School Dist. of Little Rock,* 78 Ark. 118, 95 S. W. 438. Since the act conferring the power to borrow money, § 11535, Pope's Digest, does not fix or limit the rate of interest that may be paid, we think the district would not be authorized to contract for the payment of interest or brokerage in excess of the legal rate, 6 per cent. per annum.

With this limitation, the decree will be affirmed.