LAKESIDE SPECIAL SCHOOL DISTRICT OF CHICOT COUNTY *v.* GAINES.

4-6449                                                      153 S. W. 2d 149

Opinion delivered June 30, 1941.

*Wallace Townsend,* for appellant.

*Ed Trice,* for appellee.

McHANEY, J.    Appellee, a citizen and taxpayer, brought this action against appellant to enjoin it from funding its outstanding non-bonded indebtedness, incurred prior to the enactment of act 194 of 1939, approved March 9, 1939, but effective June 8, 1939, for op-

eration and maintenance of its schools, by the issuance and sale of $42,715 of 4 per cent. bonds, dated April 1, 1941, and maturing serially on January 1, 1943 to 1966, inclusive. Appellant made application to the state board of education under and in accordance with the provisions of § 11495 of Pope's Digest for authority to issue said bonds and its application was approved March 17, 1941, and it was authorized to advertise the bonds for sale. Prior thereto it had petitioned the county court to include in the questions to be submitted to the electors of appellant district, at the annual school election on March 15, 1941, the question of a two-mill building fund tax, to be collected annually on the assessed valuation of the taxable property in the district, beginning with the taxes collected in the year 1942, to pay the principal and interest of said proposed funding bond issue, with the provision that the surplus in any year, over and above the amount necessary to pay bonds and interest maturing in that year and the next six months interest on the bonds, may be used for other school purposes. The court granted the petition, ordered the question included and that notice be given as provided by law, all of which was done. The question was placed on the ballot, carrying the same information as contained in the order of the county court and in the published notice, proof of publication of which was duly made. The court canvassed the returns of said election, made an order declaring the result, and found that 47 votes were cast in the election, all of which voted for the tax and none against. The board of directors of appellant district, acting under the authority of § 2 of act 91 of 1941, on March 20, 1941, adopted a resolution, and entered same upon its records, declaring the total amount of the valid outstanding non-bonded indebtedness of the district, as of February 25, 1941, the effective date of said act 91 of 1941, to be $42,-715, which resolution was published for the time and in the manner provided in said act, and no suit was brought within 30 days from the date of the publication to review the correctness of said finding.

Thereafter bonds were duly advertised for sale as required by § 11496 of Pope's Digest and were sold to

the highest bidder with the right to convert same to bonds bearing a lower rate of interest, subject to the approval of the commissioner of education, and on condition that by conversion the district should receive no less and pay no more than it would if the bonds were not converted.

Appellant district has an assessed valuation of $1,641,290 as shown by the last county assessment. It is permitted by said act 91 to issue bonds not to exceed 8 per cent. of this valuation which is $131,303.20, and it has outstanding bonds in the sum of $85,500, so it is authorized to issue bonds in the additional sum of $45,803.20, or approximately $3,000 more than it proposes to issue. The buyer of the bonds proposes to convert the $42,715 of 4 per cent. bonds to $48,100 of 3 per cent. bonds, which is $2,296.80 in excess of the permissible $45,803.20, but by such conversion, there will be a net savings to the district of $484.45.

The complaint challenged the constitutionality of said act 91 of 1941 on the alleged ground that it attempts to permit the voting of school taxes for a purpose not authorized by Amendment No. 11, that is, "the payment of bonds to fund outstanding warrants on February 25, 1941," and also that said act is so uncertain in its terms that the indebtedness to be funded cannot be ascertained with certainty. Also that said act makes no provision for a pledge of the two-mill building fund tax voted as above stated, or for voting a continuing levy, and that the attempt to do so is void; also that the proposed converted bond issue of $48,100, together with the outstanding bonds of $85,500, exceeds the 8 per cent. permissible maximum for bonds. Appellant answered admitting appellee's status, that it proposes to issue said amount of 4 per cent. bonds under said act 91, converted to 3 per cent. bonds, and that the converted bonds exceed the 8 per cent. maximum, and denied all other allegations. After setting out the matters heretofore stated, the answer in paragraph 8 continued: "Defendant states that it has at this time $42,715 in warrants outstanding, which it is not able to pay; that it is operating under the budget law (act 194 of 1939) and is not increasing its debt, yet it is not decreasing the debt; that a warrant issued now

cannot be cashed in varying periods of time from 12 to 18 months after its date, with the result that at this time defendant district's warrants are being discounted at the rate of 8 per cent. of the face value, and at other times the rate of discount has been much higher; that it is having trouble in getting its warrants handled at all and is having to pay additional costs of operation because it is not on a cash basis. The district states that the effect of permitting it to issue these bonds will be to establish it immediately upon a cash basis, and under the budget law it must remain that way, with the result that the actual saving that the district will make in operation will be enough to retire the bond issue over the period of time that the bonds have to run; and that the proposed funding is highly beneficial to the district.''

Appellee demurred to the answer. The court sustained the demurrer and entered an order restraining appellant from issuing said bonds, and it has appealed. We agree with appellant that the court erred in so holding and in not overruling the demurrer.

We cannot agree with appellee that said act 91 of 1941 is unconstitutional, because, as alleged, it attempts to permit the voting of school taxes for purposes not authorized by Amendment No. 11 to the Constitution which authorizes the electors of school districts to vote a tax not to exceed 18 mills in any one year for "the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness for buildings. Provided, further, that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied." Section 1 of said act 91 provides that any school district that has valid outstanding non-bonded indebtedness at the time of approval of the act is "authorized and empowered to issue and sell, in the manner provided by statute for the sale of school bonds, for the purpose of funding said indebtedness, negotiable coupon bonds with the right to convert said bonds into bonds bearing a lower rate of interest, subject to the approval of the commissioner of education, upon such terms that by the conversion the district shall receive no less and pay no more than it

would receive and pay if the bonds were not converted; . . . and provided further, that any district with an assessed value of over one million dollars may issue bonds as authorized herein in an amount that, with its outstanding bonds, will make its bonded indebtedness not more than 8 per centum of its assessed value; . . .'' Section 2 of said act relates to the duty of the board of directors in determining the total valid non-bonded debt of the district and the procedure to question the finding of the board. Section 3 is the emergency clause and is as follows: ''Because of the depression and the low assessed values that have become general throughout the state of Arkansas, it is hereby ascertained and declared that many of the school districts of the state have become badly indebted, with the result that they do not have sufficient funds to pay the operating expenses of their respective schools to the end of the present school year, their costs of operation are being increased, because they are not on a cash basis, and many of said schools will be compelled to close, thus depriving a large number of children of the state of schools, an emergency is hereby ascertained and declared, and this act, being necessary for the preservation of public peace, health and safety, shall take effect and be in full force from and after its passage.''

The answer alleges and the demurrer admits that the debt sought to be funded was incurred for maintenance. Amendment No. 11 authorizes a tax for three purposes: (1) ''the maintenance of schools,'' (2) ''the erection and equipment of buildings'' and (3) ''the retirement of existing indebtedness for buildings,'' and it is insisted that ''maintenance of schools,'' as used in the amendment, means future maintenance and not a valid existing indebtedness for maintenance that has been incurred prior to act 194 of 1939, for which no separate tax may be voted. We cannot agree with any such narrow construction, for, if that is true, then the twelve-mill tax heretofore voted for maintenance and operation of its schools (6 mills being voted for bonds) would have to be devoted entirely to the payment of future maintenance and operations and would result in a repudiation of the exist-

ing valid warrants issued and outstanding for maintenance. In other words, if no part of the maintenance tax voted may be used to pay bonds issued for past maintenance debts, then no part of it can be used to pay the debt if no bonds are issued. It is suggested that the district should economize and create a surplus in its maintenance tax fund to pay its existing maintenance debt, and so it should. But, if it cannot use a part of maintenance tax to pay the proposed bonds, how can it lawfully pay its existing debt with a portion of such tax? There is nothing in the amendment about the issuance of bonds for any purpose. The right of a school district to issue bonds is wholly dependent upon the statutes. Said act 91 was enacted for the very purpose of relieving the dire situation of appellant set out in paragraph 8 of the answer above quoted. According to it, and the demurrer admits its truthfulness, appellant is not now paying current obligations with current revenue. Its warrants are registered and paid in the order of registration, so "that a warrant issued now cannot be cashed in varying periods of time from 12 to 18 months after its date, with the result," etc. as copied above. So appellant is not now operating on current revenue, but is paying outstanding registered warrants with such revenue.

In the recent case of *Jenson* v. *Special School District No. 6 of Hot Springs,* 199 Ark. 886, 136 S. W. 2d 169, with reference to act No. 194 of 1939, we said: "Plainly the purpose of the act was to prohibit school districts from continuing to pile up non-bonded indebtedness and to limit them in the obligations incurred in any fiscal year to the amount of the revenue for that year as determined by § 2, with but two exceptions." We there held that the district had the power and authority to borrow money and pay interest therefor to pay teachers' salaries and other current expenses, under the provisions of § 11535 of Pope's Digest, so long as it did not increase its indebtedness over the maximum of the preceding year.

Such a statutory provision as said act 91 is not a new proposition in our school law. Section 2 of act 164 of 1929, p. 814, provides: "All special school districts

of Arkansas which owe money at the time of the passage of this act, whether said money is due for construction of buildings or operating of the schools, or other legal purposes are hereby authorized and empowered to issue bonds, at a rate of interest not to exceed six per centum per annum, and evidence said indebtedness by said bonds." Construing this act and act 62 of 1927, this court, in *Wilkin* v. *Special School Dist. of Hazen,* 181 Ark. 1029, 29 S. W. 2d 267, said: "Said acts 62 and 164 were passed by the legislature to enlarge the purposes for which bonds might be issued by a special school district so as to embrace debts which had been incurred for general operating expenses." And in *Berry* v. *Sale,* 184 Ark. 655, 43 S. W. 2d 225, the late Chief Justice HART, in construing § 59 of act 169 of 1931, now § 11492 of Pope's Digest, which provides: "All school districts are now authorized to borrow money and issue negotiable coupon bonds for the repayment thereof from school funds for building and equipment of school buildings, making additional repairs thereto, purchasing sites therefor, *and for funding any indebtedness created for any purpose and outstanding at the time of the passage of this act* as provided in this act," said: "Under the express terms of the act, power is given to the school district to borrow money and issue negotiable coupon bonds for funding any indebtedness created for any purpose and outstanding at the time of the passage of the act, March 25, 1931." There the Laura Connor School District of Woodruff County was indebted in the sum of $58,500 at the effective date of said act 169, but subsequent thereto had paid $11,093.89 of said debt. We held the district was authorized to issue bonds for the remainder of said debt only. These cases are conclusive of the constitutionality of the act and of the right of appellant to fund its outstanding indebtedness under the provisions of said act 91 of 1941.

It is argued that the specific mention of "existing indebtedness for buildings," in Amendment No. 11, among other purposes for which a tax may be voted, excludes the right to vote a tax for any other existing indebtedness. We cannot agree, for if a tax may not be

voted for existing indebtedness for maintenance, it cannot be paid, and it can make no difference what the form of such existing indebtedness may be, whether in warrants or bonds.

Another attack on act 91 is that it is void because of uncertainty of its terms. In § 1, the act says that "any school district . . . that has valid outstanding indebtedness *at the time of the approval of this act*" is authorized, etc., and in § 2 the directors are required to declare the total amount of non-bonded debts "outstanding *at the time of the passage of this act.*" We think "the time of the approval" means the same thing as "the time of the passage." *Jackson* v. *State,* 101 Ark. 473, 142 S. W. 1153.

Another argument is that the proposed bonds are void because appellant has pledged a two-mill building fund tax for their retirement. It is contended that because the ballots used in the election, as also the election notice, recites that six mills of the building fund levy will be used to retire outstanding bonded indebtedness, and that two mills of the building fund tax will be used to retire the new issue constitutes a diversion of the building fund contrary to the second proviso in Amendment No. 11, that "no such tax shall be appropriated for another purpose . . . than that for which levied," as construed in *Horne* v. *Paragould Special School District,* 186 Ark. 1000, 57 S. W. 2d 568. But not so. In the Horne case they were attempting to divert a portion of the 12 mills voted for school purposes to the payment of bonds, and we held this could not be done. Here, the electors of the appellant district voted upon a ballot containing this information: "For eighteen mills school tax including eight mills for building fund. Six mills of the building fund were voted a continuing annual tax to pay a proposed refunding issue of $85,500, and the additional two mills will be used to pay the principal and interest of a proposed funding issue of $42,715 that will run for 24 years and 9 months, and, if voted will be a continuing levy of that amount annually on the real and personal property now embraced in this district," etc. The electors could not have been misled as to the purpose

of the two-mill tax levy they were voting, as the ballot informed them it would be used to pay a proposed "funding" issue of bonds. The word "funding" as here used, means, according to Webster, "To convert into a more or less permanent debt bearing regular interest; as, to fund the floating debt." The argument seems to be that where the electors vote a tax to support a bond issue to fund debts for maintenance and direct that the proceeds of the tax be put in the building fund, it cannot be used to pay the bonds for which it was voted because put in a building fund. This argument is not tenable. The statute, § 11498 of Pope's Digest, provides for the creation of a building fund and the procedure to be followed in the issuance of bonds supported by a continuing tax levy. It provides: "Hereafter on the proposed issue of bonds by any school district, either for the purpose of borrowing money or to refund any outstanding bonds of the said district, the directors shall submit to the electors of the district either at the annual school election or at a special school election called for that purpose, . . . the question of the number of mills to be set aside in the building fund to pay the bonds and interest on the proposed issue." This section was construed in *Parsons* v. *Barnett,* 189 Ark. 1057, 76 S. W. 2d 83. The purpose of the legislature was to provide a fund, called a building fund, into which the tax voted to pay bonds by a continuing levy should be credited. It could not constitute a diversion to put the two-mill tax here levied in the building fund, as the legislature has so directed. It will be used for the retirement of the proposed funding issue, and that is the very purpose for which it was voted.

The final argument against the proposed bond issue is that appellant proposes to issue in converted bonds more than 8 per cent. of the assessed value of the property, together with its outstanding bonds, and appellant concedes this to be true. Act 91 specifically limits the amount of bonds that can be issued in two provisos in § 1. The first limits the amount of bonds that may be issued in districts with less than one million assessed valuation "in an amount that with its outstanding bonds, not to exceed 7 per cent. of its assessed value;" the sec-

ond "that any district with an assessed value of over one million dollars may issue bonds as authorized herein in an amount that, with its outstanding bonds, will make its bonded indebtedness not more than 8 per centum of its assessed value." The right of conversion is given, subject to the approval of the commissioner of education, "upon such terms that by the conversion the district shall receive no less and pay no more than it would receive and pay if the bonds were not converted." The legislature, at the same session, enacted act 393, Acts 1941, p. 1157, which amended § 11493 of Pope's Digest, same being § 60 of act 169 of 1931, so as to read as follows: "No school bonds shall be issued at any time that would make the total outstanding bonded indebtedness of the school district at that time, exclusive of interest, exceed seven per cent. of the assessed valuation of the real and personal property in the district, as shown by the last county assessment. This shall not prohibit bond issues refunding bonded indebtedness, including loans from the Revolving Loan Fund, that exceed seven per cent., nor shall it prohibit bond issues funding non-bonded indebtedness of the district whenever such funding bonds shall be authorized by any statute of Arkansas, nor shall it prohibit the conversion of authorized bond issues to bonds bearing a lower rate of interest, subject to the approval of the Commissioner of Education, upon such terms that the district shall receive no less and pay no more in principal and interest combined than it would receive and pay in principal and interest combined if the bonds were not converted, and all school bonds heretofore issued in substantial compliance with the provisions of this act are hereby confirmed and validated."

These acts, as also § 11496 of Pope's Digest, evidence the purpose of the legislature to authorize school districts to contract to issue bonds and to convert them into bonds bearing a lower rate of interest, "subject to the approval of the Commissioner of Education, upon such terms that the district shall receive no less and pay no more in principal and interest combined than it would receive and pay in principal and interest combined if the bonds were not converted," etc. Said § 11496 provides

in part: ". . . No bonds shall be sold for less than par on the basis of bonds bearing interest at the rate of six per cent. per annum, but bonds bearing a less rate of interest may be sold at a discount, and bonds may be sold with the privilege of conversion into bonds bearing a lower rate of interest, but the terms of sale on any bonds sold at a discount shall be such that the district shall receive no less, and would pay no more than substantially the same as par for bonds bearing interest at the rate of six per cent. per annum. . . ." This statute is still the law and no school bonds may be sold for less than par based on a 6 per cent. rate. In *Lucas* v. *Reynolds,* 168 Ark. 1084, 272 S. W. 653, in construing amendment No. 10, and the enabling act No. 210 of 1925 which provides that "bonds may be sold at six per cent. with the privilege of conversion into bonds bearing lower rate on such terms that the county, city or town shall receive thereon and pay therefor substantially the same amount of money as on six per cent. bonds at par," the late Chief Justice McCulloch, as to the contention that the converted bonds exceeded the amount of the county's debt, said: "The contract for the sale of bonds was made in contemplation of converting the bonds into those of a lower rate of interest, and the county will not, in fact, become liable on bonds in excess of the actual outstanding indebtedness existing at the time of the adoption of the Amendment to the Constitution. In other words, when the amount of premiums contracted for on six per cent. bonds is reduced to the corresponding value of the bonds bearing a lower rate of interest, the amount of bonds will be equivalent to the amount of indebtedness to be discharged. There is, therefore, no conflict between the contract and the terms of the statute." See, also, *Railey* v. *City of Magnolia,* 197 Ark. 1047, 126 S. W. 2d 273.

We are unable to distinguish this case from those. While it is true the amount of the converted bonds exceed the 8 per cent. limitation, it is also true in the cited cases that the converted bonds exceeded the indebtedness found to be outstanding on the effective date of the amendment, as found, in the first case, by the county court, and the

second by the city council. But it is also true that the total amount of the converted bonds, principal and interest, is the equivalent of the total amount, principal and interest on the bonds contracted to be sold at the higher rate so the 8 per cent. limitation is not exceeded.

The decree will be reversed, and the cause remanded with directions to overrule the demurrer to the answer, and for further proceedings not inconsistent with this opinion.

GRIFFIN SMITH, C. J., and MEHAFFY, J., dissent.

MEHAFFY, J. (dissenting). I cannot agree with my associates in holding, as I think they do, that this court has a right to construe amendment No. 11 as authorizing the voting of a tax to pay this indebtedness, although the constitution does not so provide.

The decree in this case was originally affirmed and I wrote an opinion which was approved by a majority of this court. The court afterwards, however, concluded that it should be reversed, to which conclusion I do not agree.

I submit, therefore, my original opinion as my dissenting opinion in this case. The opinion is as follows:

This is a suit by a taxpayer, instituted by appellee against the appellant seeking to permanently restrain and enjoin the appellant school district from issuing and disposing of bonds, and alleging that act 91 of the Acts of 1941 is invalid and that the district proposes to pledge, for the retirement of proposed bonds, the proceeds of a 2-mill building fund tax voted by the electors of the district contrary to the provisions of law and in opposition to amendment No. 11 of the State Constitution. Appellee alleged in his complaint not only that act 91 was invalid, but that the district proposes to issue bonds to a greater amount than is authorized by the act.

The appellant filed answer alleging that the indebtedness which it proposed to fund has been incurred in the maintenance of schools and is one of the purposes for which amendment No. 11 expressly authorizes a school tax to be voted; denied that act No. 91 was void, and alleged that act 91 expressly authorized it to issue and

sell negotiable coupon bonds in the manner provided by statute for the sale of school bonds; alleges that notice was given and the provisions of the statute complied with and that the State Board of Education had approved the issue and approved the advertising and sale of these bonds; that the sale of the bonds was duly advertised in a newspaper published in Chicot county and a copy of proof of publication notice is attached thereto and made part thereof; that the sale was held at the time and place advertised and bonds were sold to the highest bidder, who proposed to convert $42,715 in 4 per cent. bonds into $48,100 3 per cent. bonds. The answer alleged the dates on which the bonds would mature. The appellant adopted and entered upon its records a resolution declaring the indebtedness as of February 25, 1941, and a copy of this resolution is attached and made part of the answer; that this resolution was duly published, and that no suit has been brought to review the correctness of the finding made by such resolution, and that therefore the finding in the resolution is conclusive both as to the total amount of the indebtedness and as to its validity; that the appellant had $42,715 in warrants outstanding which it was not able to pay; that it is operating under the budget law and is not increasing its debt; yet it is not decreasing the debt; that a warrant issued now cannot be cashed in varying periods of time, from 12 to 18 months after its date; that the result of this is that appellant's warrants are being discounted at the rate of 8 per cent. of the face value, and sometimes at a higher rate; that it is having trouble getting its warrants handled at all, and is having to pay additional cost of operation because it is not on a cash basis; it states that permitting it to issue these bonds will establish it immediately upon a cash basis, and that there will be an actual saving to the district and that the proposed funding is highly beneficial to the district.

The appellee filed a demurrer to the answer upon the ground that the answer did not constitute a legal and valid defense to the complaint. The court sustained the demurrer and issued the restraining order prayed for, and the case is here on appeal. All the requirements of the law governing the case were complied with.

The appellant contends first that act 91 is valid. Constitutional amendment No. 11 provides for the support of common schools by taxes, and that the taxes shall never exceed in any one year 3 mills on the dollar of taxable property, and an annual per capita tax of one dollar, to be assessed on every male inhabitant of the state over the age of 21 years. It then provides that the General Assembly may, by general law, authorize school districts to levy, by a vote of the qualified electors of such district, a tax not to exceed 18 mills in any one year for the maintenance of schools, the erection and equipment of school buildings, and the retirement of existing indebtedness for building.

Act 91 provides that any school district of Arkansas that has valid outstanding non-bonded indebtedness at the time of the approval of the act is authorized and empowered to issue and sell in the manner provided by statute for the sale of school bonds, for the purpose of funding said indebtedness, negotiable coupon bonds, with the right to convert said bonds into bonds bearing a lower rate of interest, subject to the approval of the commissioner of education upon such terms that by the conversion the district shall receive no less and pay no more than it would receive and pay if the bonds were not converted. Said act also provides that any school district with an assessed value of less than $1,000,000, as shown by the last county assessment, may issue bonds as authorized herein in an amount that, with its outstanding bonds, will make its bonded indebtedness not more than 7 per cent. of its assessed value, and provided further that any district with an assessed value of over $1,000,000 may issue bonds in an amount that, with its outstanding bonds, will make its bonded indebtedness not more than 8 per cent. of its assessed value. The act then provides what must be done by the board of directors before issuing bonds.

It will be observed that amendment No. 11 authorizes a tax for the maintenance of schools, the erection and equipment of school buildings, and the retirement of existing indebtedness for buildings. There may be many districts in the state that have existing indebtedness for

buildings, and under act 91 indebtedness of this character could be paid by issuing bonds and voting the tax. We therefore think that act 91 is valid, but what the appellant is attempting to do under the act is not to 'vote a tax and issue bonds for the retirement of existing indebtedness for buildings; this it could lawfully do; but under amendment No. 11 it could not vote a tax except for the maintenance of schools, and erection and equipment of school buildings, and the retirement of existing indebtedness for buildings. It could not, under said amendment, vote a tax for the retirement of existing indebtedness for any other purpose. If it needed money for the maintenance of its schools or for the erection and equipment of buildings or for the retirement of existing indebtedness for buildings, it could vote a tax and issue bonds for these purposes, but for no other.

It is earnestly insisted by the appellant that, since the amendment authorizes the voting a tax and issuing bonds for maintenance of schools, this provision authorizes the tax and bond issue in this case because, it said, that in authorizing the tax for maintenance, it does not specify or limit the tax to future maintenance or operation, but simply maintenance, and that this would carry the authority to pay indebtedness incurred for maintenance equally as well as the authority to levy taxes to secure money to pay for future maintenance.

The provision of the constitution, in the same sentence that authorizes a tax for maintenance, also authorizes a tax for the retirement of existing indebtedness for buildings, but it does not authorize a tax for existing indebtedness for any other purpose. Moreover, the amendment also provides that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied.

We think it would be unreasonable to hold that the constitution meant, in the use of the phrase "maintenance of schools" the retirement of existing indebtedness for that purpose.

The appellant, in its statement, says: "These outstanding warrants are for practically every school pur-

pose except the retirement of bonds and the erection of school buildings.'' According to appellant's statement, the indebtedness for which the tax was voted and the bonds issued is not for the retirement of existing indebtedness for buildings. But it is earnestly argued that a portion of it at least was for the maintenance of schools. There is no possible way to tell from the record just what all the indebtedness was for, but if it were all for maintenance of schools, the tax could not be voted under amendment No. 11, or if it were for any purpose other than the purpose mentioned in amendment No. 11.

This court recently said, in speaking of amendment No. 11: ''Three purposes are named in the amendment (1) 'for the maintenance of schools'; (2) for 'the erection and equipment of school buildings'; and (3) for 'the retirement of existing indebtedness for buildings.' '' *Horne* v. *Paragould Sp. Sch. Dist. No. 1,* 186 Ark. 1000, 57 S. W. 2d 568.

It was further stated in the opinion in the above case: ''This appears to be very simple language, unambiguous, and not difficult of comprehension.'' It was also said: ''In other words, the 12 mills voted for school purposes could not lawfully be appropriated for payment of bonds or the interest thereof, nor could the 6 mills voted for bond purposes be appropriated for schools. Such is the plain language of the amendment. No other construction can be given, and any other in the present case would probably work disaster to both parties.''

The above statement was quoted with approval in the case of *Pledger* v. *Cutrell,* 189 Ark. 562, 74 S. W. 2d 646, 75 S. W. 2d 76, in which case the court further said:

''Therefore, the county treasurer of Jefferson county was without authority in law in paying or asserting the right to pay out any of the funds arising from the 18-mill levy of taxes accruing to the school district under amendment No. 11 for the retirement of bonds or accrued interest thereon owed by said school district, and the injunction was properly awarded restraining such misapplication of funds.

"For the reason stated, the chancellor was correct in awarding a permanent injunction against appellant treasurer, and the decree will therefore be affirmed."

The word "maintenance" has a well understood meaning. It means "the act of maintaining" and "maintain" means to support, sustain, to uphold, to keep up. See Webster's Unabridged Dictionary, and for numerous definitions of the word "maintenance" see Law Reports, Queen's Bench Division, vol. 11, p. 1.

The appellant is not seeking to vote a tax or issue bonds for the maintenance of schools, for the erection and equipment of school buildings, nor for the retirement of existing indebtedness for buildings. Its purpose is to vote the tax and issue the bonds for the purpose of paying a debt which was not created for buildings.

As said in *Horne* v. *Paragould Sp. Sch. Dist., supra,* the language in this amendment seems to be very simple, unambiguous, and not difficult of comprehension. See, also, *Houston Sch. Dist. No. 39 of Perry County* v. *Commercial National Bank of Little Rock,* 199 Ark. 683, 135 S. W. 2d 677; *Oak Grove Consolidated Sch. Dist. No. 9* v. *Fitzgerald, Treas.,* 198 Ark. 507, 129 S. W. 2d 223.

It is contended that the suit is barred. The act provides that any elector in said district who is dissatisfied may, by a suit in chancery court of the county brought within ninety days after the date of such publication, have a review of the correctness of the finding made in such resolution, but if no such suit is brought within thirty days from the date of such publication, the finding in the resolution shall be conclusive both as to the total amount of indebtedness and as to its validity; that is, the amount of the indebtedness cannot be questioned nor the validity of the indebtedness. But in the case at bar, the amount of the indebtedness is not questioned, nor its validity, and it is not barred for any other purpose.

All the provisions of the law with reference to publication and the election and result of the election and resolution approving bond issue, and all matters necessary to submit the question to a vote of the people, were complied with. There can be no doubt from the record in this

case that the people in the district desire to pay this debt. The record shows that every person who voted at the election voted in favor of the tax and the bond issue, and, but for the constitutional amendment No. 11 which limits the power to vote a tax, they would be entitled to issue bonds to pay this debt. School districts do not derive their power to issue bonds from the constitution, but derive their power from the legislature. But they do derive their power to vote a tax from the constitution, and are limited by its terms.

I think, for the reasons stated, that the decree should be affirmed.