WALL *v.* EUDORA SPECIAL SCHOOL DISTRICT OF CHICOT COUNTY.

4-6465                                                    154 S. W. 2d 12

Opinion delivered July 14, 1941.

*Donham, Fulk & Mehaffy,* for appellant.

*W. W. Grubbs, Thos. I. Cashion, John Baxter* and *Wallace Townsend,* for appellee.

McHANEY, J. As appellants say: "This suit was brought by W. O. Hazelbaker as a taxpayer of Eudora Special School District of Chicot county, Arkansas, to determine the validity of a certain refunding bond issue of that district. Equitable Reserve Association, as a holder of some of the bonds thereby refunded, intervened. The complaint of the plaintiff alleged various grounds upon which the refunding operation was invalid, and asked that the bond issue be declared void and that the defendants be restrained from making any payments thereon out of the funds of the district.

"A temporary restraining order was issued, but upon final hearing the order was dissolved, the legality of the refunding bonds was sustained, and the complaint was dismissed. From that decree this appeal is prosecuted. According to a stipulation appearing in the record, the original plaintiff, W. O. Hazelbaker, 'was requested and induced to withdraw from the case,' and 'to abandon his right of appeal' by his filing of a written 'Waiver Of Right Of Appeal.' This, however, did not succeed in ending the litigation, as counsel for appellants arranged

for the substitution of another taxpayer, R. W. Wall, who intervened after the entry of the decree and prayed an appeal to this court, which was granted.''

Under date of March 25, 1940, appellee school district entered into a written contract with Walton-Sullivan & Company, bond dealers of Little Rock, Arkansas, as follows: ''We appoint you our agent to assist in selling approximately $140,000 of bonds of the Eudora Special School District, Chicot county, Arkansas. The bonds are to be 4½% per annum, payable semi-annually, and to mature as follows:

''Bonds to mature January 1, 1942, through January 1, 1960, bonds to be callable in ten years at 101 and accrued interest.

''These bonds are being issued for the purpose of refunding outstanding bonds bearing 5%.

''You are to pay for printing and trusteeing the bonds and the approving attorneys' opinion as to the legality of the issue. You are to have the right to name the trustee, place of payment and attorney approving the legality of the bonds.

''When you have found a purchaser for these bonds at 103 we agree to execute the necessary papers to effect the issuance of these bonds. The purchaser of the new bonds shall have the privilege of converting them to a lower coupon, said conversion to be figured according to Universal Bond Values Tables.

''Said issue of bonds is to be payable from 9 mills *ad valorem* tax, which tax will be levied until all of the bonds have been paid in full.

''When you have secured a purchaser for this issue of bonds at the price mentioned above we agree to pay you 3% of the par value of the issue.

''This contract shall terminate one year from date hereof unless extended by mutual consent by indorsement hereon.''

The conversion option given in this contract was exercised, and sometime in the fall of 1940 the district issued $154,000 of 3½% bonds, bearing date July 1, 1940. These bonds were deposited with the State Board of Education to be surrendered and delivered to the holders

of the old 5% bonds outstanding as they were surrendered for cancellation. That the transaction as consummated was an exchange of new bonds for old is shown by the certificate of sale, executed by the president and secretary of the district's board of directors and of the registration by the county treasurer, dated October 11, 1940, in the former of which it is stated: "Total amount of cash for which sold, Exchanged for outstanding bonds." It is undisputed that Walton-Sullivan & Co. did not buy the new bonds, as contemplated by said contract, but they either bought the outstanding bonds and exchanged them or procured the holders thereof to surrender same in exchange for new bonds. In any event, all the outstanding bonds have been surrendered and exchanged for new bonds, all of which has met the approval of the State Board of Education, except $11,500 of the old bonds. In order to take up this amount in cash the district advertised and sold to Simmons National Bank of Pine Bluff the remainder of the new refunding bonds on December 27, 1940. This suit was filed December 30, 1940, when a temporary injunction halted further proceedings.

To reverse the decree dismissing the complaint for want of equity, several questions are argued by appellants. It might be well now to say that as to the Equitable Reserve Association, listed as an appellant, and who was an intervener in the action below, the question was whether the bonds held by it were callable. The court found on the undisputed evidence that they were callable, although not so specified in the bonds themselves, and decreed a reformation thereof to show this fact. If it has appealed from this decree, it presents no argument on the question, so as to it the decree is affirmed on the callability of the bonds.

The first argument against the decree of dismissal is that the district's agent, Walton-Sullivan & Co., acted in a dual capacity both as seller and purchaser of the bonds, which invalidated the transaction. We think this statement assumes a fact that did not exist. While the district's certificate of sale above mentioned does say, on the blank form prescribed by the Department of Education, "To whom sold—Walton-Sullivan & Company,

Little Rock, Arkansas,'' it later shows that the new bonds were not sold at all, but were ''Exchanged for outstanding bonds.'' So, there was no sale of the new bonds to Walton-Sullivan & Co. They did either purchase the outstanding bonds with their own funds and deposited them with Simmons National Bank or procured the holders to so deposit them for the purpose of having said bank surrender them to the State Board of Education in exchange for new bonds, and the whole proceeding had the approval of the State Board. They were exchanged for 3½ per cent. bonds upon a basis of par for 4½ per cent. bonds. We see no basis in this for a charge of duplicity or double dealing by Walton-Sullivan & Co.

It is next argued that the new issue of $140,000 exceeds the statutory limit of 7 per cent. of the assessed valuation of the district and is void. This argument is based, not on the fact that the outstanding bonds exceeded 7 per cent. of said valuation, because they were issued prior to the statute so limiting bond issues, but on the fact that, on January 1, 1941, the district had cash on deposit with the county treasurer, to the credit of the building or bond fund, in a sum in excess of $5,000 which should have been used to pay bonds maturing on said date which would have reduced the district's bond debt to $135,000, for which amount refunding bonds could have been issued. It must be remembered that this is a refunding of bonds, and not a bond issue to fund a non-bonded debt. So long as a bond is outstanding it may be refunded, which is simply a renewal of the note by giving a new one. We can see no reason why the district might not renew or refund a bond instead of paying it by agreement with the holder, even though the district might have on hand a sum sufficient to pay same. Whether this is true or not, failure to pay one or more bonds with cash on hand could not have the effect of voiding the whole issue or of the one or more that might have been paid, but was not. These bonds were refunded prior to January 1, 1941, and the district's credit balance may not have been in the treasury at that time.

It is next said that the conversion cost the district more than 4½ per cent. bonds would, and was, therefore,

invalid and unlawful. In the first place, the matter of conversion must meet the approval of the Department of Education. Section 11507 of Pope's Digest provides that ''No conversion shall be made as provided herein until the terms of the conversion have been approved by the State Department of Education.'' So, the Department is made the final arbiter of this matter by statute, and the courts will not go behind the Department's finding, in the absence of fraud. Here the Department approved the conversion and its figures show a small saving thereby. For a further discussion of this matter see *Lakeside Special School District* v. *Gaines, ante* p. 779, 153 S. W. 2d 149.

Two other questions are argued, one, that the district could not date its bonds back to July 1, 1940, and, two, that the $11,500 bond sale, made to pay off bonds not tendered for refunding, was not advertised and sold to the highest bidder, which we dispose of by saying we find them without merit.

The argument is also made that Walton-Sullivan & Co. has collected or will collect a fee in excess of the 3 per cent. of $140,000 provided for in the contract hereinbefore set out. It would be impossible to adjudicate their rights in this action as they are not parties hereto. We may say, however, that this opinion will not be *res adjudicata* of a suit by the district or any taxpayer thereof to which said firm is a party in which a determination of their rights may be involved.

Affirmed.

MEHAFFY, J., not participating.