Dr. T. Kenneth James, Ed.D. Commissioner of Education Arkansas Department of Education #4 State Capitol Mall Little Rock, AR 72201-1071
Dear Dr. James:
I am writing in response to your request for an opinion on a number of questions concerning the legal authority of a school district classified as being in "fiscal distress" to enter into future debt obligations. Specifically, you recite the following facts and pose seven questions with regard to those facts:
 An Arkansas school district has been identified and classified as in fiscal distress pursuant to A.C.A. § 6-20-1901 et seq. As a result, the district is required to obtain Departmental approval before that district can incur any debt obligation. A.C.A. § 6-20-1907. In addition, it should be noted that the district began the 2005-06 school year with a deficit operating fund balance. The district currently has installment contract obligations and current indebtedness (as those terms are defined pursuant to A.C.A. 6-20-401) that have matured or will mature in the near future. The district proposes to address these obligations by refinancing the terms of the installment contract obligations into one general installment contract obligation with an eight (8) year maturity date. The district proposes to address the current indebtedness obligation by either: 1) incurring one large current indebtedness loan obligation for the specific purpose of retiring the current indebtedness obligations and setting the maturity date on the new debt obligation in the next school year on December 31, 2006; or 2) pledge unused school district real property as collateral against a multi-year loan obligation.
You state that "in reviewing the statutory provisions of A.C.A. §§6-13-620, 6-20-401 et seq., 6-20-801 et seq., 6-20-901 et seq., 6-20-1001
et seq., or 6-20-1202 et seq. and in reviewing prior interpretations of these provisions of law such as Attorney General opinions (AG opinions), it is not clear whether the school district has the actual legal authority to enter into the future debt obligations proposed by the district for the sole purpose of addressing the current debt obligations now facing the school district." You have therefore posed the following seven questions:
 1. May a school district with a deficit operating fund balance in one school year refinance an installment contract obligation for the sole purpose of extending the life of the currently existing installment contract obligations to a future school year maturity date?
 2. May a school district with a deficit operating fund balance in this school year incur additional current indebtedness to mature on December 31, 2006, of the next school year for the purpose of retiring existing current indebtedness that is due to mature in this school year?
 3. May a school district pledge school district property to incur non-bonded current indebtedness financing?
 4. Is a school district operating with (or without) a deficit fund balance eligible to incur a revolving loan pursuant to A.C.A. 6-20-810
et seq. in order to refinance an installment contract or retire current indebtedness obligations of the school district?
 5. May a school district operating with a deficit fund balance sell unused school property for the purpose of retiring existing installment contract obligations and/or current indebtedness obligations of the district?
 6. May a school district refinance an installment contract, lease purchase, postdated warrant or short-term lease agreement for a time period of a maturity date eight (8) years beyond the current maturity date on the existing debt instrument to be refinanced?
 7. May a school district essentially convert a current indebtedness obligation allowed under A.C.A. 6-20-402 into a multi-year debt obligation instrument by simply borrowing enough money on a multi-year debt obligation to pay off or retire the current year debt obligation?
RESPONSE
In my opinion definitive answers to some of these questions must be addressed with reference to all the facts regarding the proposed debt transactions. In addition, some of the issues are confided to the discretion of the State Board of Education or Department officials. The ultimate resolution of these issues is therefore a task for the Department of Education, in consultation with its four staff attorneys (see Act 2126 of 2005), or, if necessary, with the aid of the Department's assigned attorney on my staff. I am not authorized to act as a fact-finder in the issuance of official Attorney General opinions or to dictate the discretion afforded other state officials by statute. I have set out below a recitation of the applicable law on the questions you pose and, where possible, have indicated my opinion as to the answer to each question. These conclusions may be used as a starting point for evaluating the facts regarding the particular unnamed district to which you refer.
That said, it is my opinion that the answer to your first question depends upon the facts. The answer to each of your second and third questions, in my opinion, is "no." The answer to your fourth question is that, although the issuance of a revolving loan for these purposes may be a legal possibility, the discretion to approve or disapprove such a loan is confided to the State Board of Education or the Commissioner. In my opinion the answer to each of your fifth, sixth and seventh questions is "no."
Question 1 — May a school district with a deficit operating fund balancein one school year refinance an installment contract obligation for thesole purpose of extending the life of the currently existing installmentcontract obligations to a future school year maturity date?
In my opinion the answer to this question depends upon the facts. As an initial matter, as you note, any school district classified as being in fiscal distress requires prior written approval of the Department of Education before incurring any debt. A.C.A. § 6-20-1907 (Supp. 2005). The applicable statutory provision governing the refinancing of installment contract obligations is A.C.A. § 6-20-402(c) (Supp. 2005). Nothing in this subsection restricts its application to districts not in "fiscal distress." It provides as follows:
 (c)(1) A school district may refinance one (1) or more outstanding
postdated warrants, lease-purchase agreements, or installment contracts and pay the usual, customary, and reasonable costs of the refinancing by issuing one (1) postdated warrant, lease-purchase agreement, or installment contract, if the refinancing:
(A)(i) Results in a net savings to the school district.
 (ii) A net savings results if the outstanding principal balance plus the remaining interest payments and any early-call penalties is greater than the new principal balance plus the total interest to be paid and the cost of the refinancing of the outstanding postdated warrant, lease-purchase agreement, or installment contract;
 (B) Does not extend the term of the postdated warrant, lease-purchase agreement, or installment contract more than five (5) years beyond the term of the existing individual outstanding postdated warrants, lease-purchase agreements, or installment contracts, and the original term together with any extension does not exceed ten (10) years;
 (C) Does not increase the outstanding debt owed by the school district under the existing outstanding postdated warrants, lease-purchase agreements, or installment contracts except to the extent necessary to cover usual, customary, and reasonable costs of issuance of the new refunding postdated warrant, lease-purchase agreement, or installment contract and except to the extent necessary for new financing as authorized by subsection (a) of this section;
 (D)(i) Except as allowed under subdivision (D)(ii) of this section, the outstanding postdated warrants, lease-purchase agreements, or installment contracts have not been previously refinanced;
 (ii) Any outstanding postdated warrants, lease-purchase agreements, or installment contracts may be refinanced more than one (1) time if:
(a) The school district realizes a savings from the refinancing;
(b) The term of the debt obligation is not extended; and
 (c) The refinancing does not increase the total debt obligation of the school district; and
 (E) The school district obtains the prior written approval of the Department of Education to refinance one (1) or more outstanding postdated warrants, lease-purchase agreements, or installment contracts.
 (2) The State Board of Education may promulgate rules and regulations as necessary to implement subdivision (c)(1) of this section.
(Emphasis added). Apparently, the State Board of Education has not promulgated any rules and regulations to implement this provision.
Although you have stated that the "sole purpose" of the refinancing would be to "extend the life of the currently existing installment contract obligations to a future school year maturity date," I cannot determine from the information provided whether several of the requirements of subsection (c) above would be met in connection with the proposed refinancing. Specifically, I have not been provided sufficient information to determine whether the proposed refinancing would: 1) "result in a net savings" to the district; 2) extend the term more than five years beyond the original term or more than ten years total; 3) whether it would increase the outstanding debt; or 4) whether the obligation has been previously refinanced. The answer to your first question may depend upon these variables.
Question 2 — May a school district with a deficit operating fund balancein this school year incur additional current indebtedness to mature onDecember 31, 2006, of the next school year for the purpose of retiringexisting current indebtedness that is due to mature in this school year?
In my opinion the answer to this question is "no."
"Current indebtedness" is defined as "a debt obligation incurred by a school district for the purpose of paying maintenance or general operation expenses for the fiscal year in which the debt is incurred or for a purpose for which a postdated warrant, installment contract, or lease-purchase agreement may be issued." (Emphasis added).
Section 6-20-402(d) addresses current indebtedness. It provides as follows:
 (d)(1) A school district may incur current indebtedness and issue its notes or other evidence thereof as provided in this subsection.
 (2) All current indebtedness incurred in a fiscal year shall mature on or before December 31 of the calendar year in which the fiscal year ends.
 (3) Current indebtedness is not included in the term "bonded indebtedness" and shall not be considered a part of the total debt of a district as limited by §§ 6-20-803 and 6-20-1202.
 (4) Current indebtedness shall be payable from and may be secured by a pledge of all or any part of the revenue receipts of the issuing district for the fiscal year in which the debt is incurred.
 (5) The amount of obligations incurred by a school district for any school fiscal year, including current indebtedness, shall not be in excess of the revenue receipts of the district for that year except as expressly authorized in subsection (a) of this section.
Emphasis added.
In my opinion it is clear from this statutory language that "current indebtedness" may only be issued to mature in a current fiscal year. This statutory language does not allow current indebtedness to be "rolled over" or extended into the next fiscal year to, as you suggest, "retir[e] existing current indebtedness that is due to mature in this school year."See also, Op. Att'y Gen. 1996-066 (where school district incurs obligations with various lending institutions in a particular fiscal year and then proposes to pay those obligations through the issuance of new loans, which will be paid from a different later year's revenues and the new obligations are not incurred for any of the purposes listed in6-20-402(a), the action is in all likelihood contrary to law).
Question 3 — May a school district pledge school district property toincur non-bonded current indebtedness financing?
I have not found any statutory authorization supporting this action. In my opinion, therefore, the answer to this question is "no."
I assume from the facts presented earlier that this question inquires about the pledging of school district real property to support non-bonded current indebtedness. I have not found any statutory authorization for the pledging of real property to secure such indebtedness. In fact, it appears that the pledge of school district real property to secure evenbonded indebtedness has been prohibited since 1975. Decades ago, the pledge or mortgage of real property was authorized to support school district bonds and other indebtedness. See Acts 1931, No. 169, §§ 61 and 62. See also, e.g., Horne v. Paragould Special School District No. 1,186 Ark. 1000, 57 S.W.2d 568 (1933). Section 61 of Act 169 of 1931 was amended by Act 220 of 1975, which amended away any authority to pledge school district real property as collateral for bonds sold after the effective date of the 1975 act. The emergency clause of the 1975 act stated that: "It is hereby found and declared that the existing practice of granting mortgages on the property of a school district as security for its bonds is unnecessary to the marketability of the bonds and unduly and unnecessarily hampers the directors of school districts in the management, control and disposition of properties of the district." Acts 1975, No. 220, § 4. In addition, § 62 of Act 169 of 1931, which referred to the mortgage of property to secured amounts "borrowed" by school districts, was amended away in 1997. See Acts 1997, No. 1300, § 18. As a consequence, the corresponding provisions of the Arkansas Code Annotated (A.C.A. §§ 6-20-1204 and -1205 (Repl. 1999)), contain no mention of or authorization to pledge district real property to support bonds or other indebtedness. In my opinion the answer to your third question is therefore "no."
Question 4 — Is a school district operating with (or without) a deficitfund balance eligible to incur a revolving loan pursuant to A.C.A.6-20-801 et seq. in order to refinance an installment contract or retirecurrent indebtedness obligations of the school district?
With regard to the refinancing of an installment contract, you have not specified exactly how a revolving loan would be utilized to "refinance" such an instrument. If you mean to inquire whether such proceeds could be applied to pay off or retire such an installment contract, it appears that the action you describe is a possibility under the relevant statute (A.C.A. 6-20-802), but in my opinion the refinancing would nonetheless have to comply with the provisions of A.C.A. § 6-20-042(c), discussed in response to your first question. In addition, the Commissioner of Education is responsible for making a recommendation to the State Board of Education as to whether any such loan is approved and may himself exercise the discretion to approve or disapprove such a loan if that authority has been delegated to him by the Board. See A.C.A. §6-20-805(c). With regard to the retiring of "current indebtedness" with the use of a revolving loan, in my opinion the answer is "no."
In my opinion the relevant statute is A.C.A. § 6-20-802 (Supp. 2005). That statute provides in pertinent part as follows:
 Subject to the conditions and limitations contained in this subchapter, any school district may borrow and the State Board of Education may lend moneys in the Revolving Loan Fund for any of the following purposes:
* * *
 (9) The refunding of all or any part of its legally issued and outstanding debt, both funded and unfunded;
This statute does not limit its applicability to districts operating without a deficit fund balance. Subsection (9) above authorizes the "refunding" of "legally issued and outstanding debt, both funded and unfunded." The word "refunding" or "refund" has been described as follows: "[t]he word "refund" as a verb is defined in Webster's New International Dictionary as follows: "Refund: To fund again or anew; specif., Finance, to borrow, usually by the sale of bonds, in order to pay off an existing loan with the proceeds." Board of Street ImprovementDistrict # 315 v. Arkansas Highway Commission, 190 Ark. 1045, 1048,83 S.W.2d 81 (1935). Additionally, Black's Law Dictionary (5th Ed. 1979) defines "refunding" as a "[t]ype of refinancing . . . in which the issuer of bonds replaces outstanding bonds with a new issue. In general, any act of repayment of a loan or money advanced." Id. at 1152 (emphasis added). In addition, subsection 9 of A.C.A. § 6-20-402 authorizes the "refunding" of "outstanding debt, both funded and unfunded." In my opinion this language is broad enough to include "current indebtedness" or debts represented by installment contracts. See also, Op. Att'y Gen. 1994-212
(concluding that "it appears . . . [that] outstanding post-dated warrants may be paid with the proceeds of a revolving loan").
Although the acquisition of a revolving loan for the purpose of "refinancing" an installment contract is thus a legal possibility, in my opinion such refinancing must nonetheless comply with the intent of A.C.A. § 6-20-402(c), discussed in response to Question 1, which expressly addresses the requirements for refinancing installment contracts. These requirements may be difficult to meet under the facts you describe.
With regard to the issuance of a revolving loan to "retire" current indebtedness, it is my opinion that although the broad language of A.C.A. § 6-20-802(a) may be broad enough to admit this possibility, it appears, for the reasons stated in response to Question 2, that this may not be consistent with legislative intent. It is clear in my opinion that "current indebtedness" may not be extended to the next fiscal year under A.C.A. § 6-20-402. It is therefore difficult to reconcile the restrictions of A.C.A. § 6-20-402 with the authority to "refund" outstanding "debt" through use of a revolving loan under A.C.A. §6-20-802.
In any event, it should be noted that the Commissioner and/or the State Board retain the discretion to approve or disapprove any application for such a loan. This power is discussed at A.C.A. § 6-20-805, which provides as follows:
 (a) Within a reasonable time after its receipt, each application shall be examined by the Director of the Department of Education as to accuracy with respect to answers contained therein relating to fiscal matters; a statement of his findings, together with his recommendations, shall be submitted with the application to the State Board of Education for consideration.
 (b) After considering the merits of each application, the board may, in its discretion, approve the application for the full amount of the proposed loan, approve the application for a loan of a lesser amount than the amount requested, or disapprove the application. The applicant shall forthwith be notified by the director of the action taken by the board.
 (c) The board may, by resolution, delegate to the director any of the powers or duties vested in or imposed upon it by this subchapter with respect to the approval of loans made from the Revolving Loan Fund in instances where such loans are to be evidenced by revolving loan certificates of indebtedness.
 (d) Such delegated powers and duties may be exercised by the director in the name of the board.
Emphasis added.
Question 5 — May a school district operating with a deficit fund balancesell unused school property for the purpose of retiring existinginstallment contract obligations and/or current indebtedness obligationsof the district?
In my opinion the answer to this question is "no." I assume from your recitation of the facts that this question has reference to unused school district real property.
Section 6-13-620 is the general statute addressing the powers and duties of school district boards of directors. It provides in pertinent part as follows:
 (a) Except as prohibited under subsections (b) and (c) of this section, the board of directors of each school district in the state shall be charged with the following powers and perform the following duties:
* * *
 (3) Purchase buildings or rent schoolhouses and sites therefor and sell, rent, or exchange the sites or schoolhouses;
Clearly, school districts have the power to sell school property and collect the proceeds. Your fifth question, however, is whether the proceeds from such a sale can be used to "retire" existing installment contract obligations or current indebtedness obligations. In my opinion the answer to this question is "no" because A.C.A. § 6-20-402(b)(5) states that: "Payments by a school district pursuant to postdated warrants, installment contracts, and lease-purchase agreements shall be charged against the budget of the school fiscal year in which they become due and shall be paid out of the revenue receipts for that fiscal year." (Emphasis added). Similarly, § 6-20-402(d)(4), regarding payments for "current indebtedness," provides that it "shall be payable from . . . all or any part of the revenue receipts of the issuing district for the fiscal year in which the debt is incurred."
The obligations you mention must be paid, according to A.C.A. §6-20-402, from "revenue receipts."[1] That term is defined at A.C.A. §6-20-401(4) as meaning "those receipts that do not result in increasing school indebtedness or in depleting school property." The subsection goes on to enumerate the types of funds that constitute "revenue receipts." It appears that proceeds from the sale of school real property are not properly classified as "revenue receipts," but rather as "nonrevenue receipts," which are defined as "those receipts which either incur an obligation which must be met at some future date or which change the form of an asset from property to cash. Specifically they consist of the proceeds of a bond sale, payment of losses on an insurance policy, thereceipts from the sale of property, etc. . . ." A.C.A. § 6-20-401(3) (emphasis added).
In my opinion, therefore, the answer to your fifth question is "no."
Question 6 — May a school district refinance an installment contract,lease purchase, postdated warrant or short-term lease agreement for atime period of a maturity date eight (8) years beyond the currentmaturity date on the existing debt instrument to be refinanced?
In my opinion the answer to this question is "no." Again, subsection (c)(1)(B) of A.C.A. 6-20-402 states, as one of the conditions for refinancing such obligations, that the proposed refinancing:
 (B) Does not extend the term of the postdated warrant, lease-purchase agreement, or installment contract more than five (5) years beyond the term of the existing individual outstanding postdated warrants, lease-purchase agreements, or installment contracts, and the original term together with any extension does not exceed ten (10) years;
(Emphasis added). You have not indicated the term of the current debt instrument. It appears, however, that your question posits a situation where the new maturity date would be extended more than five years beyond the original "term" or maturity date. In my opinion the answer to your question is therefore "no."
Question 7 — May a school district essentially convert a currentindebtedness obligation allowed under A.C.A. 6-20-402 into a multi-yeardebt obligation instrument by simply borrowing enough money on amulti-year debt obligation to pay off or retire the current year debtobligation?
In my opinion the answer to this question is generally "no," although more facts about the proposed transaction would be needed to fully address the issue. As noted earlier, the statutory provisions governing "current indebtedness" are found at A.C.A. § 6-20-402 (d). Subsections (d)(2), (3) and (4) provide, as noted earlier, that:
 (2) All current indebtedness incurred in a fiscal year shall mature on or before December 31 of the calendar year in which the fiscal year ends.
* * *
 (4) Current indebtedness shall be payable from and may be secured by a pledge of all or any part of the revenue receipts of the issuing district for the fiscal year in which the debt is incurred.
 (5) The amount of obligations incurred by a school district for any school fiscal year, including current indebtedness, shall not be in excess of the revenue receipts of the district for that year except as expressly authorized in subsection (a) of this section.
"Current indebtedness," therefore, is generally to be paid out of current-year revenues. To that extent, therefore, the answer to this question is generally "no." See also, Op. Att'y Gen. 1996-066 (where school district incurs obligations with various lending institutions in a particular fiscal year and then proposes to pay those obligations through the issuance of new loans, which will be paid from a different later year's revenues and the new obligations are not incurred for any of the purposes listed in 6-20-402(a), the action is in all likelihood contrary to law). You do not specify what type of "multi-year debt obligation" is contemplated under this question, however. I assume that it does not include any type of bond issue to fund nonbonded indebtedness under A.C.A. § 6-20-1227. The possible use of a revolving loan for this purpose is discussed in response to Question 4, supra. Again, for districts in fiscal distress, any new debt obligations are subject to prior written approval by the Department.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] I have not found any other statutory authority similar to A.C.A. §6-20-802(a), regarding revolving loans, which might arguably be invoked as separate authority to use real property sale proceeds to retire such debt.